UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| United States of America | : | |
| | : | |
| v. | : | Magistrate No. 08-1220-M |
| | : | |
| George Georgiou | : | |

BRIEF IN SUPPORT OF APPEAL SEEKING THE
AMENDMENT OF CONDITIONS OF BAIL

I.   INTRODUCTION

The defendant, George Georgiou, a citizen and resident of Ontario, Canada, has

been on release since October 3, 2008, following his arrest on a complaint and warrant

charging securities fraud.  The conditions of release include the requirements that he post

substantial security and reside at the residence of his uncle, Gregory Paschalides, in

Bayside, New York, subject to home confinement with electronic monitoring (Bail Order

attached as Exhibit A).

Mr. Georgiou seeks an amendment to his conditions of bail to permit him to

reside with his family in Ontario, Canada pending disposition of the charges in this Court

and has proposed substantially more secure bail conditions to satisfy the requirements of

the Bail Reform Act, including most notably, the posting of substantially more security

and a procedure or regime for the waiver of any extradition rights or right to bail pending

extradition, as is described below.

II.   DISCUSSION

A.   Procedural Background

Mr. Georgiou was arrested on September 17, 2008, on the basis of the charges set

forth in the attached Complaint and Warrant (Exhibit B).  No indictment has been

returned as, with the defendant's concurrence, the Court has extended the Speedy Trial Act on two occasions.

Upon his initial appearance, Mr. Georgiou was detained by order of Judge Rueter who found that he was both a risk of flight and a danger to the cooperating witness. The defense disputes those findings in Judge Rueter's order. At the initial appearance the government presented the Court with single line excerpts of undercover recordings, untested for contextual significance in relation to the allegations. The proceeding, because of the presentation of conclusory and one-sided descriptions of the evidence by the government, necessarily results in disadvantage to the defendant and perhaps even to the Court. In fact, no transcripts or tape recordings were provided at the initial hearing whatsoever. Specifically, the defense focuses on Judge Rueter's statements that "based on the evidence presented at the detention hearing, it appears there is a strong likelihood that defendant will be convicted of these serious crimes" and "the defendant threatened the CW with physical injury if the CW failed to go along with the stock manipulation scheme, or otherwise report the scheme to authorities". (See Exhibit C at page 1). In fact, the defense believes the evidence does not support these findings.

In summary, because the government was able to give sound byte descriptions of its evidence, and the defense could not respond meaningfully, the Magistrate Judge made the findings that he did.

In addition, Judge Rueter found that the defendant was a danger to the cooperating witness because of certain alleged, out-of-context threats. As is discussed below in greater detail, the defense disputes this characterization of the undercover

recordings and believes that the only way this Court can fairly evaluate the alleged threats is to direct the government to play the actual recordings seeking contextual edification.

Following Judge Rueter's order detaining the defendant, Mr. Georgiou filed an appeal to this Court. Before any action was taken by this Court, the parties reached an agreement that resulted in the bail order presently in force attached as Exhibit A.

On December 2, 2008, undersigned counsel filed a motion to amend the conditions of bail to permit the defendant to return to his family in Ontario, Canada pending disposition of the criminal charges in this Court and proposed a substantial increase in financial security and a system/regime by which the defendant will waive his rights to fight extradition and the right to bail during the pendency of any such proceeding.

On December 10, 2008, Judge Rueter denied the motion to amend the conditions of bail without a hearing (Exhibit D). In his latest order, Judge Rueter acknowledged the $2,000,000 of unsecured bonds but did not expressly note the defendant's pledge of an additional $500,000 of "hard" collateral. Furthermore, the reference to United States v. Anderson, 2008 WL 1820819 (D.N.D. Apr. 22, 2008) as cited is distinguishable and not on point. There, the defendant violated his bail conditions, fled, a bench warrant was issued for his arrest pursuant to which he was re-incarcerated. He then sought bail on the grounds of family hardship in order to attend a funeral. His request was understandably denied. Judge Rueter further compared the Anderson case with that of Mr. Georgiou's case by excerpting from Anderson "the defendant only has himself to blame for his detention and the hardship which it has occasioned". The cite to Anderson is not helpful. Mr. Georgiou is not a fugitive, he has complied with every aspect of his bail conditions,

3

there is no bench warrant out for his arrest and his wife is suffering from a medical condition as described in the medical report submitted to this Court.  The instant motion arises out of Judge Rueter's denial of the motion to amend the conditions of release.

B.      This Court Has Jurisdiction Over the Instant Motion

Under 18 U.S.C. § 3145(a)(2), a defendant may file, "that the Court having original jurisdiction over the offense, a motion for amendment of the conditions of release."  Under this rule, the defendant must seek review of the conditions of release in Court where the charges are lodged.  United States v. Vega, 438 F.3d 801 (7th Cir. 2006).  Accordingly, this Court has jurisdiction over the instant motion.

C.      The Defendant's Proposed Conditions of Release to Permit Him to Reside in Ontario Provide Reasonable Assurance of the Defendant's Appearance When Directed and the Safety of Any Person and the Community

This appeal is prompted by a serious family problem faced by Mr. Georgiou: on October 11, 2008, eight days after his release, his wife gave birth to their fifth child.[1] Since the birth of the child, Mr. Georgiou's wife has suffered from post-partum depression and anxiety (copy of medical report attached as Exhibit E).  She is caring for four small children, including the newborn, all the while without the assistance of her husband.  The family is completely dependent on Mr. Georgiou.

While the previous bail agreement was entered into in good faith, the defense respectfully submits that the combination of changed circumstances in the Georgiou family and the submission of substantially tighter conditions of release make it reasonable and appropriate that he be permitted to reside with his family under supervision.

---

[1] In 2006, one of their children passed away after a 6 year battle with cancer.

4

To a very great extent, the defendant has been disadvantaged by the procedural posture of the previous bail proceedings, having been initiated, not upon the filing of an indictment but rather upon the execution of an arrest warrant.  Thus, the defendant has no discovery rights and found himself facing extreme and pejorative allegations about his character, assets, and the alleged offense conduct.  Thus, he was to a great extent unable to respond to many of the allegations.

Pursuant to the December 2, 2008 filing of the motion to amend bail conditions, the government has permitted defense counsel to listen to certain recorded conversations, a courtesy that is significant and much appreciated.  However, the government has continued to rely upon the same pejorative and even shrill descriptions of the offense conduct and the defendant's character.  The defense will not reply to all of these attacks but rather takes issue with several very significant assertions.  First, the government contends that the defendant presents a danger to the government's confidential informant, asserting that the defendant made certain threats during the undercover recordings.  Defense counsel has listened to certain of the tape recordings which are believed to include these alleged "threats" and respectfully submits that, should the government wish to argue that the defendant threatened the informant, the government should play those portions it relies upon because based upon that which has been provided to the defense, the defendant's comments appear to have been taken out of context by the government to the Court and do not justify the allegations of threats to the informant,[2] causing significant prejudice to the defendant.  Accordingly, the defense believes that the tapes it

---

[2] It should be noted in this connection that Judge Rueter found that the defendant threatened the informant if he did not continue to participate in the alleged inchoate scheme.  *See* Exhibit C at 1.  However, the government has not offered any evidence to the knowledge of the defense, to support the notion that such a threat was made.

has heard do not support the assertion or finding that the defendant made threats to the undercover informant.

A second feature of the procedural posture of this issue is that the government continues to make shrill assertions about the defendant's guilt and overwhelming nature of its case and the defendant's substantial asset position, allegedly located throughout the world.  Once again, the defense cannot know everything that is in the government's files; however, if the government seeks to rely upon the assertions that the case is overwhelming and that the defendant possesses substantial liquid assets located in other countries, it is respectfully submitted that the government should proceed with the actual presentation of evidence, and not simply make representations that seem to present more heat than light to the issue.

The proposed conditions are set forth in the proposed order attached hereto, but may be distilled to the requirement that $2,000,000 in unsecured bail bonds be executed by family members and friends (consisting of the persons listed in the proposed order); that additional "hard" security totaling approximately $500,000 be posted, consisting of the execution of appropriate documentation to encumber real estate by one of Mr. Georgiou's friends and by his mother; and most importantly, that the defendant execute the appropriate waiver of extradition and supervision package to provide reasonable assurance that he would be promptly extradited.

In the meantime, Mr. Georgiou has identified additional sources of collateral to provide further assurances of his appearance at trial.  The following twenty friends and family members will post bonds in the amount of $100,000 each:[3]

> Marialena Watson
> Robert Watson
> Teresa Emanuel
> Elena Georgiou
> John Matsias
> George Matsias
> Calvin Pursas
> Raniero Corsini
> Henry Fong
> Joe Genovese
> Diane Underwood
> Tasos Stathopoulos
> Gabrielle Chevalier
> Andy Constantinou
> Bill Petrie
> Andrea Sielken
> Tim Berezowski
> Earle Hammond
> Kypros Kyprianou
> Leonidas Georgiou

A "judicial officer may at any time amend the order [to release on conditions] to impose … different conditions of release."  See United States v. Byrd, 969 F.2d 106, 110 (5th Cir. 1992).  Although conditions may be imposed to "provide the requisite assurance" of later appearance, "the judicial officer must impose the least restrictive bail conditions necessary to assure appearance and safety."  Himler, 797 F.2d at 159.  This is because "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755 (1987).

---

[3] The listed persons reside outside the U.S., except for Andrea Sielken, a New York resident.  It is requested that they be permitted to execute the bond before an appropriate officer in accordance with the law of their jurisdiction of their residence.

The conditions of release under the pretrial release order are not the least restrictive necessary to ensure Mr. Georgiou's appearance and the safety of individuals in the community. Indeed, the four factors set forth under 18 U.S.C. § 3142(g) for consideration of the appropriate release conditions — the nature and seriousness of the offense, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness of any danger to the community — all support the conclusion that Mr. Georgiou would return from Canada if he were allowed to leave and that he would not pose a danger to the safety of any individuals.

First, Mr. Georgiou is not charged with "a crime of violence, a federal crime of terrorism, or [a crime that involves] a minor victim or a controlled substance, firearm, explosive, or destructive device," which are the offenses of specific concern identified in the bail statute. 18 U.S.C. § 3142(g)(1). He is accused of securities fraud — an altogether different type of offense — and nothing about this offense suggests that Mr. Georgiou's appearance and the safety of persons cannot be guaranteed by appropriate conditions of release.

Submitted as Exhibit F with this motion are many statements by friends and business associates attesting to Mr. Georgiou's character as a peaceful and law-abiding member of the community.

Indeed, the government has not argued that these crimes are violent. Instead, the government argued that Mr. Georgiou has a tremendous incentive to flee because he faces a twenty-year sentence, because the scheme involved "hundreds of millions of dollars" in intended losses.

Intended financial loss is one of the most vigorously disputed issues in securities fraud cases and is extremely difficult to prove. This government's inflated estimate of exposure, which is subject to substantial attack, does not support a finding that Mr. Georgiou has no incentive to return. Moreover, in securities fraud cases a 20 year sentence has typically been reserved for the most egregious of cases with enormous actual loss such as Enron, Worldcom and the current allegations of a $50 billion fraud by Bernard Madoff. In the post-*Booker* world, intended loss and the sentencing guidelines as a whole are advisory only and reasonableness is the touchstone. Respectfully, a 20 year sentence based on the facts alleged in the complaint would be "unreasonable."

Second, "the weight of the evidence against the person" does not support separating Mr. Georgiou from his family pending trial. 18 U.S.C. § 3142(g)(2). At the preliminary hearing, the government's evidence consisted of the testimony of an FBI agent (who has since left the agency), the disclosure of a cooperating witness (who has substantial problems of his own and is highly impeachable)[4] and a description of the evidence by government counsel. This evidence is so far untested. Securities fraud cases are highly complex and can be difficult to prove beyond a reasonable doubt. Given the state of the evidence, the Court should not have concluded that "there is a strong likelihood that [Mr. Georgiou] will be convicted." To the contrary, the bail statute expressly preserves the presumption of innocence. 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). In fact, if the case proceeds to trial, Mr. Georgiou will vigorously contest liability. Much of the evidence the government cites to show stock manipulation can be explained as

---

[4] The government's informant has recently been charged in an Information with masterminding a $40,000,000 fraud, involving the concerted submission of fraudulent claims to judicially-created settlement funds. Mr. Georgiou is not involved in that case or the underlying events.

legitimate investment activity.  There is substantial evidence that Georgiou conducted

extensive due diligence on the companies in question and had "good faith" belief in their

prospects, to his family and friends' financial detriment.  The evidence will show that Mr.

Georgiou did not profit from criminal acts.  In short, the weight of the government's

evidence will be seriously diffused and rebutted by Mr. Georgiou's defense in the event

of a trial.

   Third, the history and characteristics of Mr. Georgiou strongly support the

conclusion that he will return to appear at trial as promised.  18 U.S.C. § 3142(g)(3).  Mr.

Georgiou has no criminal record and no criminal history, and was not on probation,

parole, or under any other restriction at the time of his arrest.[5]  Moreover, he has strong

family ties — including a wife of thirteen years, and four children.   He has deep

community roots, having lived in the same area for 38 of his 39 years, is a member of his

church council and has supported multiple charitable organizations such as church,

hospital, and childrens' foundations.  As stated, Mr. Georgiou has been on electronic

monitoring since October 03, 2008.  Since this time, on over a dozen occasions, Mr.

Georgiou has been unsupervised, on his own recognizance for entire day business or legal

meetings, in and out of the jurisdiction without incident.  He has a perfect pre-trial

service record.  Once outside his uncle's apartment, Mr. Georgiou's electronic monitor is

only as restrictive as his willingness to abide by this Court's order; in short, Mr. Georgiou

has not fled.  There is nothing to suggest that residing with his family would change his

respect for the Court's writ.  The government's assertions of risk of flight are unfounded,

unsupported and completely conflict with Mr. Georgiou's character and conduct.

---

[5] The sole prior event cited by the government was a suspension from the Canadian securities industry
entered thirteen years ago — which the government concedes was "for conduct unrelated to that described
here."

He also has the support of numerous family and friends in Canada and the United States — who are willing to post equity in their own homes, and who will sign PRBs to provide the Court with assurances that Mr. Georgiou will appear.

This substantial security is particularly important because Mr. Georgiou's wife, children, family and close friends would suffer terrible consequences if he defaults.  Mr. Georgiou will not subject his wife and children to the loss of their home.  He would subject twenty friends or family members to judgments of $100,000 each if he fled.  He will not consign the many family members and close friends signing unsecured bonds to financial harm on his behalf to that fate.  The substantial amounts posted and the severe consequences to these close family and friends effectively secure Mr. Georgiou's appearance for trial.

The government has argued in hyperbolic fashion that the defendant has no respect for the criminal justice system of our country.  There is no evidence for such a bare assertion.  To the contrary, the defendant has demonstrated his commitment to comply with the orders of the Court as stated above.  Even in the face of his family's continued mourning for their lost child, his wife's depression, hardship and the birth of a new baby, his respect and compliance for this Court outweighs all personal considerations.  While one could easily understand why he would feel so strongly about returning home, he has chosen to accomplish that return through the appropriate means (the filing of a motion before this Court) and not by fleeing back to Canada.

Flight would be a false hope in any event, and Mr. Georgiou has no incentive to pursue it.  If Mr. Georgiou does not return, the government will surely pursue and extradite him.  See United States v. Cirillo, 1999 WL 1456536, at *1.  While awaiting

extradition, he risks being imprisoned in Canada. <u>See</u> Greenspan Affidavit. Upon his eventual return, he would face certain pretrial detention. And in addition to the substantive fraud charges, he would face consecutive years of imprisonment for bail jumping and undoubtedly new arguments of consciousness of guilt by the government. <u>See</u> 18 U.S.C. § 3146[6]. For these reasons, courts often allow foreign defendants to return home pending trial. <u>See</u> <u>Cirillo</u>, 1999 WL 1456536, at *1; <u>United States v. Maximov</u>, 1998 WL 4185834 (D. Ariz. Sept. 5, 2008) (approving a $500,000 bond to ensure the appearance of an Israeli defendant in a bank fraud and money laundering case); <u>cf.</u> <u>United States v. Hansen</u>, 108 Fed. Appx. 331, 332 (6th Cir. 2004) (upholding release order allowing defendant to return to his home in Denmark, which does <u>not</u> have an extradition treaty with the United States).[7]

Fourth, Mr. Georgiou does not pose a danger to any person. 18 U.S.C. § 3142(g)(4). Many witnesses have submitted testimony that Mr. Georgiou is a peaceful individual and law-abiding person. The Pretrial Services Officer found that Mr. Georgiou did not pose *any* danger to the community.

The government argued in the prior proceedings that Mr. Georgiou threatened the cooperating witness which the Court accepted, in reliance of the government's claims about certain recorded conversations without consideration for context or confirmation. The procedural path of this case has indeed, as discussed above, progressed to the point at

---

[6] In prior proceedings, the government suggested that Mr. Georgiou had substantial assets around the world. Mr. Georgiou vigorously denies this allegation and the government presented nothing more than a bold assertion on this point. In any event, for the reasons stated herein, the risk of flight is more than adequately addressed.

[7] The government has contended that Mr. Georgiou has money internationally, posing an additional risk of flight. There is no basis for this statement in the record. The Pretrial Service Report identifies $400,000 in income (which is in jeopardy due to his ongoing incarceration), a $2.64 million home encumbered by a $1.8 million lien, and a $1 million business, the later of which has subsequently become nearly worthless as a result of this case.

which the Court should not rely upon the parties' descriptions of the recorded

conversations of the issue of dangerousness as they are available and are rather short in

duration.  If the government continues to assert dangerousness on the basis of such

alleged "threats" it is respectfully submitted that the government should play those

portions to this Court as defense counsel believes they are insufficient to establish a

finding of danger.  Evidence in the prosecution's possession includes dozens of email

communications between Mr. Georgiou and the cooperating witness evidencing a

relationship of friendship.  The cooperating witness had visited Mr. Georgiou on many

occasions at Mr. Georgiou's home and dined with Mr. Georgiou's wife and children.  Mr.

Georgiou had invited the cooperating witness and his family to Mr. Georgiou's home in

the summer of this year and indeed, on the day of his arrest, before the undercover

operation became clear to Mr. Georgiou, he told the uncover agent that he bore no

animosity towards the cooperating witness and that, in fact, the cooperating witness was

"welcome in Mr. Georgiou's home any day of the week".  Finally, once Mr. Georgiou is

permitted to return to Canada, his re-entry to the United States can be appropriately

limited thus providing further assurance that there is no danger to the safety of any

individual.  As a whole, Mr. Georgiou presents no danger to anyone.

     C.    The Waiver of Extradition and Supervision Regime Proposed by Edward
           L. Greenspan Would Effectively Preclude Flight by Remaining in Canada

Submitted with this motion is what has been labeled Waiver of Extradition and

Supervision Package to Support Motion to Amend Conditions of Release to Permit

Residence in Canada.  This submission is based upon the expertise and experience of one

of Canada's most eminent criminal lawyers and a highly respected member of the bar.

The defense proposes the execution of the Affidavit by Mr. Greenspan constituting his

13

assertion that he has fully warned and advised the defendant of his rights under Canadian law and that the defendant has waived his rights to resist extradition and to request bail pending extradition. In addition, the package includes an appropriate waiver of those rights by the defendant. Finally, the package includes a proposal for supervision by the appropriate authorities in Toronto.

The upshot of this package is that the defendant would be effectively unable to resist extradition, and in any event, has waived bail pending extradition. Thus far, to some extent, the Court and counsel in this case have been addressing matters of Canadian law and practice in discussing the question of whether the defendant might effectively flee to Canada. It is respectfully submitted that Mr. Greenspan's submission removes uncertainty about Canadian law and practice, that this Court may now rely upon the defense assertions of Canadian law and that ultimately, release to reside in Canada does not advance the defendant's opportunity to flee if he were to choose to do so.

The defense fears that it may not have appropriately and accurately conveyed to Judge Rueter the thrust of the Greenspan submission. The Greenspan submission, in the first instance, serves to eliminate the uncertainty of the state of extradition procedure that the parties and the Court labored under in prior hearings. American lawyers can only guess at how extradition works in Canada, leaving a Court to rely upon what is ultimately of limited reliability. Mr. Greenspan, an expert by any standard, has opined that the waiver of extradition and release pending extradition would be enforceable. More to the point, however, is that the defendant's submissions demonstrate that an extradition proceeding would turn Mr. Greenspan into a witness against the defendant, providing

testimony that the defendant made a knowing and informed waiver of extradition and release rights, thus vitiating any defense with which he can resist extradition.

Measured against the travails of the defendant's wife and family, and the risk of an extradition fight having been eliminated, it is submitted that residence in Canada is appropriate.

III.   <u>CONCLUSION</u>

Mr. Georgiou is entitled to bail on the least restrictive conditions.  The burden on his wife of caring for their four children, including a newborn, while suffering from postpartum depression, is enormous.  The proposed amendments to the conditions of release reasonably will assure Mr. Georgiou's return from Canada and the safety of the community.  For the foregoing reasons, George Georgiou respectfully asks the Court to modify the conditions of pretrial release to allow him to return to his home in Canada.

This motion does several things that are both new and different in that it provides for a substantial increase in financial security such that the defendant would impoverish more than twenty friends and family members were he to flee.  It is also submitted that the entire matter of extradition has been "buttoned down," so to speak and that this Court need not guess concerning the state of Canadian law and practice.  Finally, the defendant's family is in dire need of his support and presence and it is submitted that the

competing interests that the Court must weigh support release and permission to reside in

Canada.

Respectfully submitted,


/s/_____
Robert E. Welsh, Jr.
Catherine M. Recker
Welsh & Recker, P.C.
2000 Market Street, Suite 2903
Philadelphia, PA 19103
215-972-6430
Counsel for George Georgiou

Date: December 16, 2008

## <u>CERTIFICATE OF SERVICE</u>

I, Robert E. Welsh, Jr., certify that on December 15, 2008, a copy of the foregoing

document was served by electronic means on:


        AUSA Derek A. Cohen
        AUSA Louis D. Lappen
        U.S. Attorney's Office of the Eastern District of Pennsylvania
        615 Chestnut Street, Suite 1250
        Philadelphia, Pennsylvania 19106


        /s/_____
        Robert E. Welsh, Jr.

Date:  December 16, 2008