IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 09-88 |
| GEORGE GEORGIOU | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S RENEWED
MOTION TO AMEND CONDITIONS OF PRETRIAL RELEASE
AND MOTION FOR DETENTION

I.  **Preliminary Statement**

The defendant's third and latest attempt to modify his bail conditions is striking, not only because it comes immediately after this Court had just strengthened his existing bail conditions,[1] but also because its seeks to eliminate his home confinement provision entirely. Indeed, the defendant now seeks to split his time between the Florida coast and the New York-Canadian border with virtually unfettered daily travel. This request further demonstrates the need to detain the defendant pending trial. As the government has argued throughout the pretrial proceedings, the defendant poses a tremendous risk of flight and danger to the community. No condition or combination of conditions will assure his appearance at trial or the safety of the community.

As the case has developed from the filing of the complaint and warrant through the indictment process, the case against defendant has become more serious and the evidence more overwhelming. The defendant's response to this situation has been to deny the reality of the lengthy prison sentence he faces and instead, seek to return to the types of business ventures

---

[1] Defendant had violated the terms of his pretrial release by making an unauthorized visit to the Securities and Exchange Commission.

that led to his indictment, and to remove the restrictions on his pretrial release to which he had previously agreed. The defendant, through his conduct and his words when he was arrested has made his position clear: He does not take seriously the American criminal justice system. While the defendant has appeared for court during these preliminary proceedings, he has done so only to achieve a greater degree of freedom and greater access to his home in Canada. This Court should not entertain the defendant's latest manipulative efforts and should not assume the risk that when the defendant exhausts his attempts to deny the gravity of this criminal prosecution, and reality sets in, he will not appear for trial as directed. Thus, as this Court warned the defendant at the last proceeding, the defendant's third request for easy access to Canada should be rejected and this Court should reinstate pretrial detention.

## II. Background

The defendant is charged with leading an international stock fraud ring that resulted in over $26 million in actual losses and hundreds of millions of dollars in intended losses. The defendant is a Canadian citizen with no ties to the United States and he faces a sentence of 262-327 month under the advisory sentencing guidelines. In addition, as the indictment alleges, the defendant has used threats of violence in order to perpetuate his financial crimes, and his co-conspirators include Canadian organized crime figures.

When first confronting the bail issue in this case, the Honorable Thomas J. Rueter detained the defendant based on his risk of flight as well as his danger to the cooperating witness. While the matter was pending on appeal to the district court, the parties agreed to bail conditions that included the critical condition that required the defendant to remain on house arrest with electronic monitoring in New York. Judge Rueter reluctantly accepted the parties' proposal

based on the house arrest component, as he continued to have the concerns that caused him to detain the defendant in the first place. Notably, one of the primary reasons for this agreement was defendant's stated need to be near his New York-based counsel during plea negotiations.

Surprisingly, a few weeks later, the defendant fired his New York counsel and immediately sought to withdraw from the agreement that allowed his release, asking Judge Rueter to grant him permission to live in Canada pending his trial here. This request was based primarily on the "changed circumstance" that his wife was allegedly suffering from post-partem depression. Judge Rueter rejected this request, as he did not find any changed circumstances that would warrant reversing his earlier decision to accept the parties' agreement that the defendant remain on house arrest. Significantly, Judge Rueter again emphasized that he considered his original decision to detain the defendant to be the correct one. Undaunted, the defendant appealed to the district court for help to return to Canada, where he could flee and avoid the substantial prison term that he faces here. Judge John P. Fullam also rejected the defendant's request and ordered that he remain on home confinement with electronic monitoring.

Within the last few weeks, this Court was confronted with the fact that, even while under house arrest, the defendant made at least one unauthorized trip and has provided only the barest of details regarding his purported "business" meetings to Pretrial Services.[2] As a

---

[2] Copies of the defendant's vague descriptions to Pretrial Services, which provide virtually no information regarding the attendees or topics of his "business," are attached for the Court's review as Exhibit A. As the government explained in court, defendant has no verifiable employment, and his conduct while on pretrial release is entirely consistent with the type of frauds he perpetrated in this case. As detailed in the indictment, defendant's *modus operandi* is to cloak his frauds under the guise of a legitimate business transaction. By so doing, he convinced at three separate brokerage firms to lend him millions of dollars collateralized by manipulated stocks that he knew were virtually worthless. The only "deal" for which that the defendant provides any detail purportedly involves obtaining financing for a mining company

result, this Court tightened the supervision over the defendant by (1) ordering that Pretrial Services share his meeting requests with the government to permit the investigation of ongoing criminality and (2) prohibiting the defendant from having any further contact with potential witnesses, victims, or co-conspirators. Unabashed, the defendant now requests to not only remove his condition of home confinement, but also to allow him to travel freely between Florida[3] and Williamsville, New York, which is literally minutes from the Canadian border.

The defendant's repeated attempts to modify his release conditions to permit him easy access to Canada are indicative of the unacceptable risk of flight that he poses. Since his initial arrest, the government developed additional evidence of defendant's criminal conduct that led to a far wider ranging indictment involving nearly $30 million in actual losses and hundreds of millions in intended losses. The defendant is repeatedly captured on audio and video tape engaging in criminal conduct. Indeed, he was arrested after having met with an undercover FBI agent as part of one of his schemes. It is not hyperbole to say that the evidence of defendant's guilt is overwhelming and, as a result, he faces a very lengthy jail sentence.[4] As detailed in the

---

which is publicly traded on a foreign exchange. This is the precisely the type of "deal" for which he is charged here. The defendant has made clear that he will employ illegal methods to obtain such financing and by permitting him to be involved with yet another publicly traded company, he will once again have the opportunity to threaten the integrity of another market.

[3] The defendant's prior request to travel to Florida to confer with counsel was rejected by Judge Rueter.

[4] The defendant's argument that the government's evidence is "untested" makes little sense. Of course, all pretrial bail issues necessarily occur before the "testing" of the evidence a trial. In any event, a probable cause finding was made following a hearing before Judge Rueter on the initial complaint and warrant. Judge Rueter found that "there is a strong likelihood that defendant will be convicted of these serious crimes," and that "he faces nearly twenty years imprisonment if convicted." Subsequently, a grand jury returned an indictment alleging even more far reaching fraud. While the defendant is entitled to a presumption of innocence at trial,

indictment, defendant has access to, and has exercised control over, significant funds in financial accounts in various locations outside of the United States. He has both the incentive and the ability to flee and remain a fugitive for many years. Under these circumstances, the only way to ensure the defendant's appearance and to prevent any danger to witnesses is to detain him.

## III. Argument

### A. This Court Should Reject Defendant's Motion.

In this most recent attempt to have easy access to Canada, the defendant regurgitates most of the same arguments that were properly rejected on three separate occasions by Judges Fullam and Rueter. The defendant's suggestion that his release from home confinement and his unfettered travel between Florida and the New York-Canadian border can somehow be mitigated by the addition of a global positioning ("GPS") device is nonsense. The reality is that if defendant decided to make the short trip over the bridge to Canada from New York, federal authorities would be unable to respond in a timely fashion to stop him and, thus, his proposal is simply not workable.

While the defendant continues to argue that his waiver of extradition and posting of Canadian property provide additional security, the fact is that the Canadian Department of Justice, the Office of International Affairs of the United States Department of Justice and the chief judge of the Western District of New York all confirm that these procedures simply are not

---

this Court is not required to ignore the obvious strength of the government's case when evaluating defendant's release status. Contrary to the defendant's assertion, the government's case does not merely rest on the testimony of a cooperating witness, but rather is supported primarily with recordings, emails, trading records and other incontrovertible evidence of the defendant's guilt.

enforceable.[5] Thus, the defendant must be in a custodial situation for this Court to have any control over the defendant.

The defendant's proposal would permit him to travel freely throughout the day and would provide no mechanism to supervise with whom he met and whether he was continuing to engage in criminal conduct. This is of particularly concern given the defendant's proposed employment which would place him squarely in a position to defraud others in financial transactions. His proposed employer also raises serious concerns because of his potential involvement in the defendant's charged schemes. At the time of his arrest, the defendant was in the process of securing a $6 million loan for the purchase of a company, "A.P. Plasman." As documents recovered from defendant's computer reflect, the defendant was attempting to use the artificially inflated Northern Ethanol and Hydrogen Hybrid stocks identified in the indictment as collateral for this loan.[6] This is precisely the way the defendant defrauded the brokerage firms identified in the indictment.

The defendant's proposed employer was involved in defendant's A.P. Plasman deal and is copied on numerous emails regarding the deal.[7] Thus, the defendant has already involved his proposed employer in his criminal conduct. In short, the defendant's proposed employment appears to be his latest attempt to manipulate the system. Detention, and not GPS,

---

[5] These issues were all previously addressed on defendant's appeal. Attached as Exhibit B are the letters provided to Judge Fullam which confirm, contrary to the baseless assertions of defendant's Canadian co-counsel, that these mechanisms simply are not enforceable in Canada.

[6] See Exhibit C.

[7] For example, see emails attached in Exhibit D.

is the only way to ensure the defendant's appearance, foreclose his repeated attempts to have easy access to flight in Canada, and prevent him from committing future crimes.

The only "changed circumstance"[8] the defendant identifies in his latest request for release is that his "need for income has reached a critical point." To the extent that this true, defendant has no one but himself to blame. A natural consequence of being charged with a crime is that one's liberty is curtailed. While under home confinement, the defendant had the opportunity to seek verifiable employment. Instead, defendant has continued to meet a series of unidentified individuals to discuss unidentified "deals" involving the same types of financial transactions (i.e., loans and financing of corporate deals) which form the basis of his charges here. Moreover, it is difficult to reconcile the defendant's representations of financial crisis with his simultaneous hiring of an additional law firm to assist in his defense and his proposal that he maintain financial responsibility for three separate residences at the Florida coast, the New York-Canadian border, and his family's existing home in Canada, while apparently jetting between the Florida beach and upstate New York on weekends.[9] In any event, the defendant provides no compelling reason to permit such an arrangement.

---

[8] The defendant also reiterates familial hardship issues that have previously been rejected, including that his wife is apparently depressed because of his situation. The defendant's professed desire to return to his wife near the Canadian border is also troubling because he has involved his wife in his stock fraud schemes. Specifically, he used her as a nominee for stocks that he controlled and was secretly manipulating, and he used her to try to sell stocks in accounts that he had used for his manipulations. Considering all of these factors, Judges Fullam and Rueter correctly recognized that the defendant's family circumstances did not rise to a level of changed circumstances that would provide a basis to amend his conditions of release.

[9] It also makes little sense given that his counsel are based in Philadelphia.

Moreover, detention is appropriate because defendant also continues to pose a danger to the cooperating witness, whom he had previously threatened. The defendant has access to organized crime figures in Canada and explicitly threatened violence against individuals to ensure their compliance with his various schemes.[10] Finally, the defendant also poses a serious danger to the community of continued frauds[11]. *See e.g., United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979) ("We ... hold that a defendant's propensity to commit crime generally, even if the resulting harm would not be solely physical, may constitute a sufficient risk of danger to come within the contemplation of the Act."); *United States v. R.G. Reynolds*, 956 F.2d 192, 192 (9th Cir.1992) ("danger may, at least in some cases, encompass pecuniary or economic harm"). Since his arrest, the defendant has continued to seek "projects" which, as he described in his March 2, 2009 letter to Pretrial Services, involve "mergers and acquisitions, venture financing, business and loan brokerage . . .[and] real estate and mortgage intermediary services." Thus, there is little question that the defendant continues to pose an unacceptable threat of additional frauds through his activities. This is particularly true because, as the defendant notes, he must (falsely) proclaim his innocence in order to induce others to deal with him in the first instance.

---

[10] Among his threats were that the cooperating witness should "sleep with one eye open" and it would be easier for defendant to "get someone's legs broken" in New York than in Canada. Canadian law enforcement authorities confirm that defendant has known ties to significant Canadian organized crime figures.

[11] In addition to the frauds described in the indictment, in 1995, the defendant was banned from acting as a broker by the Canadian securities regulators based on separate fraudulent conduct.

B.  **<u>The Defendant's Detention Order Should Be Reinstated.</u>**

The case for detention is even more compelling now than it was when defendant was originally arrested and when Judge Rueter detained him. The criminal complaint charged defendant with manipulating two publicly traded stocks. The government's investigation developed further evidence that defendant was also involved in manipulating at least two other stocks, and that he had defrauded at least three separate brokerage firms by pledging artificially inflated stock as collateral for margin and other loans. As a result, the defendant caused nearly $30 million in losses to these brokerage firms and directly led to the liquidation of one of them. The defendant faces more than 22 years in prison under the federal sentencing guidelines and he has every incentive to flee.

The defendant has now had an opportunity to review most of the compelling evidence against him, which has made clear to him the overwhelming battle he faces in attempting to defend the charges. He has heard several recordings in which he explicitly discussed the illegal manipulation of several stocks and agreed to pay an undercover FBI agent to purchase blocks of stock and "park" them in his clients' accounts. The defendant has also heard the recordings in which he repeatedly demonstrated his consciousness of guilt for his participation in the deals that he was discussing. For instance, on August 13, 2008, the defendant made clear his desire to conceal the illegal scheme from authorities by telling the undercover agent that he would prefer to pay the illegal kickbacks through foreign accounts. The defendant also asked if anyone in the meeting was "wearing a wire," and he told the cooperating witness to stop taking notes of their meeting because those "notes scare the [expletive] out of me." The defendant also agreed that they should communicate surreptitiously during the scheme, using

code names for the stocks they were manipulating and code names for the participants in the scheme. The defendant said that they should purchase BlackBerrys in false names and communicate through a feature, called a "PIN," that allows for device-to-device communication.

Since he first reviewed the key evidence against him, the defendant has repeatedly sought to loosen the restrictions on his travel. Each time a court rejects his request, he simply modifies it and tries again. The defendant's conduct reflects that he cannot be trusted and he has every incentive to flee. This Court should detain the defendant.

## IV. Conclusion

For the reasons set forth above, this Court should deny defendant's motion and reinstate his detention.

Respectfully submitted,

LAURIE MAGID
United States Attorney

_____
DEREK A. COHEN
LOUIS D. LAPPEN
Assistant United States Attorneys

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 09-88 |
| GEORGE GEORGIOU | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this      day of April, 2009, after a review of the previous hearings and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

i. The defendant is charged in a nine count indictment with Conspiracy, Securities Fraud and Wire Fraud in violation of 18. U.S.C. §§ 371, 1343, 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5.

ii. The evidence in this case is strong.

(1) The defendant is captured on numerous recorded communications and emails explicitly discussing schemes to manipulate publicly traded stocks. The defendant illegally coordinated trading activity and is captured on tape discussing how he artificially inflated these stocks.

(2) The defendant was arrested while finalizing his latest scheme with an undercover FBI agent.

(3) Trading and telephone records confirm the defendant's involvement in these schemes.

(4) Various witnesses will testify to the defendant's involvement in the charged crimes, including at least one co-conspirator.

iii. The total maximum statutory penalty defendant currently faces is 165 years imprisonment, 3 years of supervised release, a $21,250,000 fine, and a $900 special assessment. The estimated guidelines range for the charged offenses is in excess of 22 years. Accordingly, the defendant has a substantial incentive to flee.

iv. The defendant is a Canadian citizen with absolutely no ties to the United States. Extradition from Canada is a complex and lengthy process.

v. The defendant is known to have money and investments under a variety of different names and entities outside of the United States.

vi. Defendant has no incentive to ever return to the United States and has the means to flee to a variety of other countries if released.

vii. The defendant has credibly claimed to have ties to organized crime and has made numerous threats to the cooperating witness.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE ROBERT F. KELLY
*Senior Judge, United States District Court*

## **CERTIFICATE OF SERVICE**

I certify that on this date a copy of the GOVERNMENT'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO AMEND CONDITIONS OF PRETRIAL RELEASE AND MOTION FOR DETENTION was served by electronic filing, on the following defense counsel:

Robert E. Welsh, Esq.
Catherine M. Recker, Esq.
Welsh & Recker, P.C.
2000 Market Street - Suite 2903
Philadelphia, PA 19103

DEREK A. COHEN
Assistant United States Attorney

Date: April 9, 2009