Attachment "B"



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

---

*Derek A. Cohen, AUSA*
*Direct Dial: (215) 861-8398*
*Facsimile: (215) 861-8619*
*E-mail Address: Derek.Cohen@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

December 23, 2008

VIA FACSIMILE (215-580-2136)
Honorable John P. Fullam
Senior Judge, United States District Court
15614 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1780

    RE:    *United States v. George Georgiou, Criminal No. 08-1220M*

Dear Judge Fullam:

        Yesterday afternoon, counsel for the defendant notified the government that he intends to present testimony at this morning's hearing from defendant's Canadian defense lawyers that a waiver of extradition would be enforceable in Canada. As Judge Rueter correctly found, and as defendant's prior counsel conceded, such waivers may be revoked by a defendant and thus are not enforceable in Canadian courts.

        Indeed, these same Canadian defense lawyers unsuccessfully argued this precise issue in United States v. Conrad Black, Crim. No. 05-727, N.D. Ill. In that case, the government produced letters from the Canadian Department of Justice confirming that waivers executed in the United States prior to the existence of a formal extradition request will not be considered by the Canadian courts and are considered non-binding.[1] The district court judge thereafter denied Mr. Blacks's request to travel to Canada.

        This fact is also confirmed by the Office of International Affairs of the U.S. Department of Justice ("OIA"), which advises that "if the defendant were to return to Canada, he could

---

    [1] These letters are attached, including one from Thomas Beveridge, Director of the International Assistance Group, who literally wrote the book on Canadian extradition law. See E.F. Krievel, Q.C., T. Beveridge, J. Haywardeter, Practical Guide to Canadian Extradition,, (Carswell publishing) (2002).

Hon. John P. Fullam
December 23, 2008
Page 2

withdraw his prior consent to extradition and contest his return to the United States."[2]  Moreover, OIA advises that the extradition process is complex and could take three years or more.  Finally, the chief judge in the Western District of New York recently denied an appeal of a detention order in which the defendant, a Canadian citizen, sought to execute a waiver of extradition and post Canadian property to secure his release.  United States v. Kouchekzadeh, 2008 WL 1902434 (W.D.N.Y. April 28, 2008 ).[3]  The court noted that "a waiver of extradition is not valid until an extradition request is actually pending in Canada. Before that, it is subject to withdrawal.  Since an extradition request will not be made until the defendant refuses to appear, his offer to waive extradition is of little value."  Id. at *3.  Similarly, the court stated that the "offer to post the Canadian property is of little value because the government is unable to seek forfeiture of Canadian property."  Id.

As Judge Rueter correctly found, on two separate occasions, defendant poses a serious risk of flight and, at a minimum, should be required to stay in the United States pending this matter.  The waiver of extradition, which the defendant already provided in connection with his current status, does not offer a basis for the defendant to return to Canada.

Respectfully yours,

LAURIE MAGID
Acting United States Attorney

DEREK A. COHEN/LOUIS D. LAPPEN
Assistant United States Attorneys

cc: Robert E. Welsh, Esq.  (Via electronic mail)

[2] See attached communication from Jeffrey Olson, a Canadian extradition expert at the Office of International affairs.

[3] A copy of this case is attached.

**Department of Justice**    **Ministère de la Justice**
Canada            Canada
International Assistance Group
284 Wellington Street, EMB 2191
Ottawa, Ontario
K1A 0H8

Telephone:    613-957-4769
Fax       613-957-8412
bkotha@justice.gc.ca

**BY COURIER and E-MAIL**

July 18, 2007

Mr. Jeffrey Olson
Office of International Affairs
U.S. Department of Justice
Suite 800 - 1301 New York Avenue, N.W.
Washington D.C.
20005

Dear Mr. Olson:

I am senior counsel with the International Assistance Group (IAG), Department of Justice, Canada. I joined the IAG in 1995 and have extensive experience in extradition matters.

You have asked the following question: if a person accused or convicted in the United States of America were granted bail and permitted to return to Canada in exchange for signing a document agreeing to waive extradition, would that waiver be effective so as to deny the person the right to challenge his/her extradition from Canada.

The *Extradition Act*, S.C. 1999, c. 18, provides the domestic legal framework for extradition to and from Canada. The Act contemplates four types of proceedings which can take place before an extradition judge in Canada.

Section 29 of the Act provides for a hearing, at which the extradition judge will assess the sufficiency of the evidence and the person sought for extradition will have the right to contest committal for extradition. There is nothing in the Act and we are aware of no case where a person, who wished to have an extradition hearing, has been denied one.

The *Extradition Act* does provide for waivers in the specific circumstances set out in sections 70, 71 and 72:

- Section 70 - the person sought may consent to committal for extradition. In doing so, the person sought concedes the sufficiency of the evidence but maintains the right to make submissions to the Minister of Justice on surrender.
- Section 71 – the person sought may consent to being surrendered. In doing so, the person sought gives up his rights under the Act to an extradition hearing and to make submissions to the Minister of Justice on surrender but maintains the protection of specialty.

# Canada

-2-

- Section 72 – the person waives his right under the Act and foregoes the protection of specialty.

Proceedings under section 70 and 71, require the consent of the person to be made in writing before the extradition judge. Similarly, the Act requires that a waiver under s. 72 be in writing and before an extradition judge. The Act also requires the Judge to inquire into whether the person before the court understands the consequences of the waiver.

In our view, a waiver or consent to extradition entered into before a foreign court would not satisfy the requirements of the *Extradition Act*, which requires a fresh consent or waiver before an extradition judge after extradition proceedings have been commenced.

You have also asked whether a person who returned to Canada from the United States on bail could on his/her own initiative appear before a Canadian judge to waive extradition, prior to receipt of an extradition request by Canada.

Again, the *Extradition Act* makes no provision for this. An extradition court is a statutory court. Unless a request for extradition has been received by Canada and approved by the Minister of Justice, the court has no jurisdiction.

We trust that this information is of assistance to you.

Yours truly,

Barbara Kothe
Senior Counsel
International Assistance Group

BK/jf

**I✦I**    Department of Justice       Ministère de la Justice
          Canada                    Canada

International Assistance Group
284 Wellington Street, EMB 2191
Ottawa, Ontario
K1A 0H8

**BY COURIER and E-MAIL**

July 31, 2007

Mr. Jeffrey Olson
Office of International Affairs
U.S. Department of Justice
Suite 800 - 1301 New York Avenue, N.W.
Washington D.C.
20005

Dear Mr. Olson:

You have asked for further information about the operation of sections 70, 71, and 72, which are the consent and waiver sections of the *Extradition Act*, as well as the status and enforceability of undertakings to waive extradition given prior to the existence of any actual proceedings in Canada. I am communicating my views on these points to Mr. Greenspan through separate correspondence and have also copied him on this letter.

First of all, it is important to appreciate that sections 70, 71, and 72 are mutually exclusive procedures which have distinct processes and consequences. They may be resorted to by a person whose extradition has been sought from Canada only after the person has been arrested or summoned to Court pursuant to proceedings under the *Extradition Act*, in furtherance of an extradition request, or provisional arrest request made to Canada by a foreign state or entity. Since they are different procedures, it would not be possible for an individual to invoke all three sections at once. Rather, the person would be expected to choose which one, if any, to invoke.

I will describe in further detail below how each section is structured.

Section 70 – Consent to Committal

Section 70 of the *Extradition Act* provides as follows:

70. (1) A person may, at any time after the issuance of an authority to proceed, consent, in writing and before a judge, to committal.

Judge to order committal

(2) A judge before whom a person consents under subsection (1) shall

(a) order the committal of the person into custody to await surrender to the extradition partner; and

# Canada

-2-

(b) transmit a copy of the consent to the Minister.

A person who consents to committal under s. 70 of the Act, waives the extradition hearing but not the entire extradition process. Such a person would have recourse to s. 70 of the Act only after the Minister of Justice has issued an Authority to Proceed pursuant to s. 15 of the Act. The issuance of an Authority to Proceed would require, as a condition precedent, the receipt of a formal extradition request from the requesting state, as well as the evidentiary and legal documentation specified in the applicable extradition treaty or the Act. The issuance of an Authority to Proceed would authorize the Attorney General of Canada to apply to the superior court of the province where the person is located, for the issuance of an arrest warrant or summons (s. 16). It would be open to the person to consent to committal in writing before an extradition judge, at any time after his or her first appearance in court.

Consent to committal functions as an acknowledgement that the person whose extradition is sought does not dispute the sufficiency of the evidence provided by the requesting state in support of its extradition request. It therefore eliminates the requirement to prove what would normally have to be proved at an extradition hearing. It would result in the person being committed for extradition by the extradition judge and the case being remitted to the Minister of Justice to determine whether the person should, in fact, be surrendered.

Within 30 days of an order of committal, the person sought for extradition has the statutory right to make submissions to the Minister about whether surrender should be ordered, or perhaps ordered only subject to conditions or assurances (s. 43). The Minister has 90 days from the date of committal to make his decision (s. 40), subject to the possibility of a further 60 day extension.

If the Minister decided to order surrender the person could apply to the court of appeal of the province to judicially review the decision, and if the decision were upheld could seek leave to further appeal to the Supreme Court of Canada. A consent to committal under s. 70 is still very much an extradition proceeding requiring the personal decision of the Minister of Justice, and with the possibility of appeals. It also allows the person sought for extradition to avail him or herself of the rule of specialty and therefore to be prosecuted in the requesting state only for the offence(s) for which surrender has been ordered by the Minister.

Section 71 – Consent to Surrender

Section 71 of the *Extradition Act* provides as follows:

**71.** (1) A person may, at any time after arrest or appearance, consent, in writing and before a judge, to being surrendered.

Judge to order surrender

(2) A judge before whom a person consents to being surrendered shall

(a) order the committal of the person into custody to await surrender to the extradition partner; and

(b) transmit a copy of the consent to the Minister.

**When Minister receives consent**

(3) The Minister may, as soon as is feasible after receiving a consent to surrender, personally order that the person be surrendered to the extradition partner.

A person who consents to surrender under s. 71 acknowledges both the sufficiency of the case for committal, and the entitlement of the Minister to issue an order of surrender. The person would also give up some of the usual rights in the extradition process including the right to make submissions to the Minister and the right to appeal the Minister's surrender decision. By choosing to consent to surrender under s. 71, the person could be returned to the requesting state in less time than the person who does not consent to surrender, and he or she would benefit from the rule of specialty.

**Section 72 – Waiver of Extradition**

Section 72 of the *Extradition Act* provides as follows:

**72.** (1) A person may, at any time after arrest or appearance, waive extradition in writing and before a judge.

**Judge to inform person**

(2) A judge before whom a person gives a waiver under subsection (1) must inform the person

(a) of the consequences of the waiver including the consequences of waiving the protection of specialty; and

(b) that they will be conveyed without delay to the extradition partner.

**Judge to order conveyance**

(3) The judge shall

(a) order the conveyance in custody of the person to the extradition partner; and

(b) transmit a copy of the waiver and the order to the Minister.

**Conveyance order**

(4) The conveyance order must

(a) contain the name of the person who is to be conveyed; and

(b) state the extradition partner to which the person is to be conveyed.

-4-

A person, who, after arrest or first appearance, chooses to waive extradition pursuant to s. 72 of the Act, removes the Minister of Justice from any further involvement in the extradition process. Waiver of extradition does not provide the individual with the protection of specialty and the person may be prosecuted or detained in the requesting state after return, for crimes in addition to those for which extradition was requested. Because of this, the extradition judge is obliged to inform the person of the consequences of giving a waiver under subsection (1) of s. 72, including the consequences of waiving the protection of specialty. This section provides the fastest means by which a person could be returned to a requesting jurisdiction.

**Enforcement of prior intentions to consent or waive**

As described above, ss 70, 71, and 72 each require the commencement of extradition proceedings in Canada before they can operate. Each provides for a person sought for extradition to agree to consent to committal for extradition, consent to surrender, or waive extradition as the case may be *after* the issuance of process pursuant to the *Extradition Act*. The *Extradition Act* has made no provision for an extradition judge to enforce a consent or waiver, or an intention to consent or waive extradition, made prior to the initiation of extradition proceedings in this country.

Whether a person accused or convicted of a crime outside of Canada can be trusted to honour the bail terms established by the foreign court is primarily an issue between that person and the foreign court. The difficulty in addressing your question with respect to anticipatory waiver in this context, insofar as potential Canadian proceedings are concerned, is that it is premised on the person reneging on the bail terms agreed to and having refused to return to the foreign jurisdiction as required. If the person subsequently wished to revoke their anticipatory waiver, the lack of express statutory authority to enforce these prior undertakings, gives rise to the possibility of extensive litigation in our courts.

Yours truly,

*Thomas Beveridge*

Thomas Beveridge
Director, International Assistance Group

Enclosure

Tb*

cc: Mr. Edward Greenspan Q.C.

**Cohen, Derek (USAPAE)**

| | |
|---|---|
| From: | Schenck, Peter (USAPAE) |
| Sent: | Monday, December 22, 2008 4:34 PM |
| To: | Cohen, Derek (USAPAE); Lappen, Louis (USAPAE) |
| Subject: | FW: "waivers of extradition" in the US |
| Attachments: | Ltr to Jeff Olson July 18 2007.pdf; JeffreyOlsonJuly31070000.pdf |

---

**From:** Olson, Jeffrey (CRM)
**Sent:** Wednesday, September 17, 2008 9:22 AM
**To:** Schenck, Peter (USAPAE)
**Subject:** "waivers of extradition" in the US

Pete,

Neither a "waiver of extradition" nor a "consent to waiver of appeals of extradition," signed by a defendant in the United States, is enforceable in Canada.  Such a waiver cannot be recognized in Canada unless the Canadian court has a request for extradition from a foreign country in front of it.  Waivers executed in the United States prior to the existence of such a request will not be considered by the Canadian court and are considered non-binding.  As a result, if the defendant were to return to Canada, he could withdraw his prior consent to extradition and contest his return to the United States. The United States would then be required to initiate new extradition proceedings in Canada to have the fugitive returned to the United States.  At best, the "waiver" *might* be considered at his bail hearing, but that is doubtful.

Should it be necessary to file a new request for extradition, the process to have the defendant returned from Canada is not a simple matter, as you know.  Extradition from Canada involves two distinct phases.  The first phase, often referred to as the "judicial phase," requires an extradition judge to determine, on the basis of the affidavit of evidence submitted by the requesting state (i.e., the United States), whether the conduct in the foreign state would constitute an offense in Canada if it had occurred in Canada and if there is sufficient evidence to prosecute the fugitive.  In the second or "executive" phase, the Canadian Minister of Justice must make a decision whether the fugitive should be surrendered to the requesting state in accordance with the relevant extradition treaty.

The decision of the extradition judge and the decision of the Minister of Justice on surrender are subject to appeal to the appropriate Canadian Court of Appeal of the province and possibly to the Supreme Court of Canada.  If the fugitive contests extradition and pursues his right of appeal, the entire process could take three years or more.

I have attached two letters prepared by my counterparts in the Department of Justice Canada that address this issue of the "waivers." These letters were prepared for and filed in the matter of *US v. Conrad Black* in the Northern District of Illinois.  Mr. Black had filed "waivers of extradition" prior to his return to Canada.  The Court ordered Mr. Black to remain in the United States pending his sentencing.

Let me know if you have any questions.

Jeff

**Jeffrey Olson**
**Trial Attorney**
**Office of International Affairs**
**Criminal Division, U.S. Department of Justice**
**Direct:  (202) 616-0714**
**Fax:      (202) 514-0080**

Westlaw.

Slip Copy                                                                      Page 1
Slip Copy, 2008 WL 1902434 (W.D.N.Y.)
(Cite as: 2008 WL 1902434 (W.D.N.Y.))

Only the Westlaw citation is currently available.
United States District Court, W.D. New York.
UNITED STATES of America,
v.
Shahab KOUCHEKZADEH, Defendant.
No. 08-CR-03A.

April 28, 2008.

Mary C. Kane, U.S. Attorney'S Office, Buffalo,
NY, for United States of America.
Mark J. Mahoney, James P. Harrington, Harrington
And Mahoney, Buffalo, NY, for Defendants.

DECISION AND ORDER

RICHARD J. ARCARA, Chief Judge.

**BACKGROUND**

*1 On January 16, 2008, the defendant was charged
in a one-count indictment with conspiracy to posses
with the intent to distribute, and to distribute, a
mixture and substance containing methylenedioxy-
methamphetamine (MDMA), a Schedule I con-
trolled substance, and 50 grams or more of a mix-
ture and substance containing a detectable amount
of methamphetamine, a Schedule II controlled sub-
stance, in violation of 21 U.S.C. § 841(a)(1), (b)
(1)(B) and 21 U.S.C. § 846.

The government moved for pretrial detention of the
defendant. On February 22, 2008, Magistrate
Judge H. Kenneth Schroeder, Jr., held a detention
hearing. Both parties proceeded by proffer at the
hearing. Following the hearing, Magistrate Judge
Schroeder ordered that the defendant be detained
pending trial.

The defendant appealed Magistrate Judge
Schroeder's detention order and the government
filed a response to the defendant's appeal. On
April 9, 2008, the Court heard oral argument on the

appeal.

Pursuant to 18 U.S.C. § 3142, the Court finds that
no condition or combination of conditions will reas-
onably assure the defendant's appearance for fur-
ther proceedings. Therefore, the Court denies the
appeal and orders that the defendant continue to be
detained pending trial.

**DISCUSSION**

Under 18 U.S.C. § 3145(b), a person ordered de-
tained by a magistrate judge may move the district
court to revoke the detention order. The district
judge must perform a *de novo* review of that de-
termination. *See United States v. Leon,* 766 F.2d
77, 80 (2d Cir.1985) ("[A] district court should
fully reconsider a magistrate's denial of bail and in
ruling on a motion for revocation or amendment of
a detention order should not simply defer to the
judgment of the magistrate, but reach its own inde-
pendent conclusion.").

Pursuant to 18 U.S.C. § 3142(e), a defendant will
be detained pending trial if the Court finds "that no
condition or combination of conditions will reason-
ably assure the appearance of the person as required
and the safety of any other person and the com-
munity."Where the indictment charges the person
with a narcotics offense for which the potential
term of imprisonment is ten or more years, there is
a rebuttable presumption that no condition or com-
bination of conditions will reasonable assure the
person's appearance or the safety of the community.
*See*18 U.S.C. § 3142(e). The defendant may present
evidence to rebut that presumption. *See United
States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir.1991).
Where the defendant does so, the presumption does
not drop out of consideration completely; rather, it
"continues to be weighed along with other factors
to be considered when deciding whether to release
a defendant."*Id.*

In determining whether the defendant has rebutted

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 3 of 4

the statutory presumption, the Court must consider the following factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

*2 (2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including-

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001).

The first factor requires that the Court consider the nature and circumstances of the offense charged, including whether the offense involves a narcotic drug. *See* 18 U.S.C. § 3142(g)(1). This offense involves a substantial quantity of drugs. The defendant faces a minimum of 5 years' imprisonment and up to 40 years' imprisonment. The government proffered that the defendant's anticipated guidelines range is 28 and that his advisory guidelines range would be 78 to 97 months. The lengthy advisory range and 5 year mandatory minimum sentence weigh against the defendant's motion for release.

As to the second factor, the evidence against the defendant appears to be strong. The Court recognizes that the defendant is presumed innocent of the charges against him. However, the government provided the Magistrate Judge and this Court with a detailed proffer of the evidence against the defendant, [FN1] which includes testimony of accomplices who dealt directly with the defendant and intercepted telephone conversations involving the defendant that corroborate the accomplice testimony. Agents also observed some of the meetings between the defendant and his coconspirators where drugs were alleged to have been transferred.

> FN1. Notwithstanding defendant's position that "an unsworn proffer can not be sufficient to sustain the government's burden," *see* Dkt. 9, at 3, it is well-settled law in this Circuit that the government may proceed by proffer at a bail hearing or a bail revocation hearing. *See United States v. Ferranti,* 66 F.3d 540, 542 (2d Cir.1995) (citing *United States v. Salerno,* 481 U.S. 739, 743, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Moreover, much of the evidence presented by the government in its proffer is also contained in the *sworn* criminal complaint against the defendant.

The third factor requires the Court to consider the history and characteristics of the defendant. The defendant is a Canadian citizen with no ties to the United States or this District. From 1980 to 1989, he lived in Iran. In 1989 he moved to Canada and in 1992 he became a Canadian citizen. He has no prior convictions in the United States but did admit that he is on probation for an obstruction of justice conviction as a result of providing an officer with a false name after being stopped for a traffic violation.

The defendant offers the following in support of his motion for release: (1) a promise to appear in court and to comply with the conditions of his release; (2) security in the form of a signature bond and the posting of Canadian property; (3) a waiver

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                                      Page 3
Slip Copy, 2008 WL 1902434 (W.D.N.Y.)
(Cite as: 2008 WL 1902434 (W.D.N.Y.))

of extradition; and (4) his strong family ties. None of these items, either individually or collectively, is sufficient to rebut the statutory presumption in this case.

\* As to the first item-the defendant's oral promise to return to the United States-is insufficient to rebut the presumption. Presumably that promise is being sincerely made right now. However, it is very possible that the defendant will change his mind and break the promise once given the opportunity to reflect on the strength of the government's case and the potential lengthy sentence that he faces if convicted. The defendant's promise to return provides no guarantee that he will.

As to the second item-the defendant initially proffered that he can secure $20,000 bail in the form of a $5,000 signature bond by the defendant's parents and the posting of property located in Canada. During oral argument, the defendant proffered that he is able to post a $20,000 bond. While not insignificant, the Court finds that $20,000 bail is insufficient to rebut the statutory presumption in this case, particularly since none of the other factors favor release. The Court also notes that both the government and probation officer oppose the defendant's offer to post $20,000 bail. The offer to post the Canadian property is of little value because the government is unable to seek forfeiture of Canadian property.

As to the third item-the waiver of extradition-it is the Court's understanding that a waiver of extradition is not valid until an extradition request is actually pending in Canada. Before that, it is subject to withdrawal. Since an extradition request will not be made until the defendant refuses to appear, his offer to waive extradition at this time is of little value. The Court also notes that the defendant lived in Iran for many years and presumably still has some ties to that area. Although the defendant proffered that he is a refugee from Iran and has no intention to return there, the possibility exists that he could flee to Iran, where no extradition treaty exists.

As to the final item-the defendant's strong family ties-this factor does not favor release where, as here, all of that family is located in a foreign country with no ties to the United States.

In sum, the Court is presented with a defendant who is a Canadian citizen with no ties to the United States and who is facing a potentially stiff prison sentence for an offense involving a large quantity of drugs. Weighing all the factors discussed above and the items proffered by the defendant in support of his release, the Court concludes that the defendant has failed to rebut the presumption set forth in § 18 U.S.C § 3142(e) and that no condition or combination of conditions would reasonably assure the defendant's appearance as requested. *See United States v. Vargas*, 804 F.2d 157 (1st Cir.1986) (finding defendant's detention proper where defendant, a citizen of Chile with no family ties to the area, was indicted for drug offenses triggering § 3142(e) presumption).

### CONCLUSION

For the reasons discussed above, defendant's motion for revocation of the detention order is denied.

\*4 SO ORDERED.

W.D.N.Y.,2008.
U.S. v. Kouchekzadeh
Slip Copy, 2008 WL 1902434 (W.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

 **Department of     Ministère de la Justice**
**Justice          Canada**
**Canada**
International Assistance Group
284 Wellington Street, EMB
2115
Ottawa, Ontario
K1A 0H8

BY COURIER and E-MAIL

December 29, 2008

Mr. Jeffrey Olson
Office of International Affairs
U.S. Department of Justice
Suite 800 - 1301 New York Avenue, N.W.
Washington D.C.
20005

Dear Mr. Olson:

I understand that a U.S. District Court judge is currently considering an application for bail
brought by a Canadian defendant in a criminal proceeding and that this has raised two questions
that the judge would like answered: 1) if the U.S. District Court ordered electronic monitoring of
the accused whether that could be enforced in Canada, and 2) whether Canada could execute a
U.S. order to forfeit Canadian property pledged as security for bail.

With respect to the first question the simple answer is that a foreign court order has no effect in
Canada.  It would provide no basis for Canadian authorities to monitor the individual involved,
and if the subject were to remove the monitoring device the foreign order would provide no basis
for Canadian law enforcement authorities to take any action against him or her.

I have also considered whether the U.S. government might be able to request Canada to obtain a
Canadian court order to enforce of the terms of a U.S. bail order, in this case electronic
monitoring of a defendant, pursuant to the Canada–U.S. Treaty on Mutual Legal Assistance in
Criminal Matters.  In my view this seems unlikely, since it does not appear to be contemplated as
the type of assistance covered by the terms of the treaty.  Moreover, while the Canadian statute
that domestically implements Canada's treaty obligations, the *Mutual Legal Assistance in
Criminal Matters Act,* provides in sections 10-18 that a Canadian court may issue orders and
warrants for the gathering of evidence in Canada on behalf of a foreign state, the enforcement of
the terms and conditions of a foreign bail order would not constitute the gathering of evidence so
as to engage these provisions.

With respect to the second question, pursuant to s. 9. 4 of the *Mutual Legal Assistance in
Criminal Matters Act* Canada can enforce foreign forfeiture orders that involve offence related
property or the proceeds of crime.  An order of estreatment made against a surety named in a

# Canada

-2-

foreign bail order is neither and would not appear to fall within the enforcement authority of the Act.

Yours truly,

Thomas Beveridge
Director, International Assistance Group


Tb*