IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| GEORGE GEORGIOU | : | No. 09-88 |

MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                              **SEPTEMBER 16, 2009**

      Presently before this Court is the "Motion to Direct Production of Documents by Kevin Waltzer and the Law Firm of Looney & Grossman LLP in Advance of Trial Pursuant to Fed. R. Crim. P. 17(c)" filed by the Defendant, George Georgiou ("Georgiou"). For the reasons set forth below, the Motion will be denied.

**I.   FACTS**

      On February 12, 2009, a federal grand jury entered an indictment against Georgiou, charging him with leading an international stock fraud conspiracy involving the manipulation of stocks of four publicly traded companies from 2004 through 2008. Kevin Waltzer ("Waltzer") is a cooperating witness who will likely testify at trial about his role in the alleged conspiracy and his active cooperation with the Government during which he recorded numerous conversations with Georgiou.

      On August 25, 2009, Georgiou filed the instant Motion, seeking records from Waltzer as well as from Looney & Grossman, LLP ("Looney & Grossman"), the law firm that represented Waltzer during and after his alleged involvement in the charged conspiracy. Specifically, as set forth in his proposed subpoena, Georgiou seeks from Waltzer the following: 1) all documents

and communications relating to Waltzer's tax liability from 2003 through the present; 2) all financial records from 2002 through 2009; 3) all non-privileged records and filings relating to litigation in which Waltzer is a plaintiff or defendant; 4) all non-privileged financial and billing records relating to three law firms; and 5) all financial and billing records "as to transactions in the names of other persons or entities" over which Waltzer "established, asserted, or maintained control or influence." (Def.'s Mot., Ex. A.)  From Looney and Grossman, Georgiou seeks the following:  1) all financial records as to Waltzer or any entity involving Waltzer; and 2) all correspondence between any lawyer of Looney & Grossman and any government employee relating to Waltzer. (Id.)

The Government asserts that it has provided Georgiou with discovery of all documents relating to the alleged fraud, as well as all evidence relating to Waltzer that is both exculpatory and material to this case, thus satisfying the mandates of Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

## II.     DISCUSSION

Federal Rule of Criminal Procedure 17(c) provides that the Court may approve the issuance of a subpoena directing a third party to produce documents in advance of trial. However, in order to obtain a Rule 17(c) subpoena for documents, a defendant must establish the following:

> 1) that the documents are evidentiary and relevant; 2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; 3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and 4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Cuthbertson, 630 F.2d 139, 145 (3d Cir. 1980) (quoting United States v. Nixon, 418 U.S. 683, 699-700 (1974)).

Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible," and Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401, 402. Under Federal Rule of Evidence 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by considerations of undue delay [or] waste of time." Fed. R. Evid. 403.

In the Memorandum of Law supporting his Motion, Georgiou cites the factors from Cuthbertson and Nixon, and then proceeds with his argument, stated as follows in its entirety:

> In the instant case, the documents clearly are evidentiary and relevant. Indeed, the documents are central to the issues raised by Counts One through Eleven. Despite repeated efforts the defendant has been unable to obtain the relevant records by informal means. The defendant cannot fully prepare his case in advance of trial in the absence of these documents. Because the records are expected to be voluminous, the failure to obtain inspection in advance would unreasonably delay the trial. Moreover, this application is made in good faith and with specificity.

Georgiou then proceeds directly to his one-sentence conclusion. His argument, however, fails to explain how "the documents are central to the issues raised by Counts One through Eleven" and what "informal means" he has taken to obtain the records. As stated in United States v. Caruso:

> United States v. Ashley, 162 F.R.D. 265, 267 (E.D.N.Y. 1995), and the case upon which the Ashley court relies, United States v. Rich, 1984 WL 845 (S.D.N.Y. Sept. 7, 1984) [stand] for the proposition that Rule 17(c) subpoenas cannot be "conclusory." In both Ashley and Rich, the subpoena proponents simply stated that they had met the Nixon test, without elaboration or explanation of how the

3

test had been so met.

948 F. Supp. 382, 399 n.3 (D.N.J. 1996) (granting defendant's motion to compel production of documents pursuant to Fed. R. Crim. P. 17(c) because defendant had "provided detailed reasons regarding his need for the documents").

The only suggestion in Georgiou's Memorandum as to what he is seeking in the records can be found in the language preceding his application of the <u>Nixon</u> factors: "The defense expects the evidence to show that Mr. Waltzer did not engage in fraudulent acts at the request of this defendant and that his trading activity is more akin to that of a day trader or a person otherwise seeking to maximize their own gain." (Def.'s Mem. Supp. Mot. at 2.) However, it is unclear from Georgiou's explanation whether he expects the evidence to show that Waltzer did not engage in fraudulent acts, or that Waltzer engaged in fraudulent acts, but not at the request of Georgiou. It is also unclear from Georgiou's explanation whether he is referring to Waltzer's trading activity as being "more akin to that of a day trader," or Georgiou's trading activity as being such. Regardless, such a vague explanation fails to satisfy the four prongs of the <u>Nixon</u> test.

The only other explanation as to what Georgiou is seeking can be found in the Motion itself, and it bears no resemblance to the explanation offered in his Memorandum:

> The defense seeks evidence of Mr. Waltzer's financial affairs which, the defense expects, will demonstrate that he was involved in a variety of other schemes. Moreover, the evidence sought will demonstrate that Mr. Waltzer engaged in schemes to defraud Mr. Georgiou and others at a time he contends he was a member of a conspiracy with them.

(Def.'s Mot. ¶ 3.) The stark contrast between the reason given in Georgiou's Memorandum and the reason given in his Motion indicates to the Court that Georgiou is truly seeking to embark on

a general "fishing expedition" through volumes of records concerning Waltzer. As already stated, the Government has provided Georgiou with discovery of all documents relating to the alleged fraud, as well as all Brady and Giglio material relating to Waltzer. This evidence is more than ample to allow a jury to appraise the biases and motivations of Waltzer without confusing the jury's understanding of the crimes charged. See United States v. Bertoli, 854 F. Supp. 975, 1079 (D.N.J. 1994) (citing United States v. Parker, 991 F.2d 1493, 1497 (9th Cir. 1993) for the proposition that "[w]hen the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness").

Furthermore, regarding the latter explanation, this Court finds United States v. Farrington, 58 Fed. Appx. 919 (3d Cir. 2003), to be instructive. In that case, Farrington and two other defendants were charged with bank fraud. One of the co-defendants, David, cooperated with the government and plea-bargained. The government tried the other co-defendant, Grosvenor, before Farrington, and Grosvenor's first trial ended in a mistrial. Thereafter, the district court joined Grosvenor's trial with Farrington's. Id. at 921. At the joint trial, the district court judge denied Farrington's motion to introduce evidence that Grosvenor had committed similar instances of bank fraud other than the one instance charged. Id. Farrington sought to introduce this evidence to support his defense that Grosvenor and David had worked without Farrington's help in committing the charged fraud. Id. at 924. The district court, however, reasoned that "it would require the Court to get into all kinds of little, mini trials. We would have to then explain how that was the same thing." Id. at 925. On appeal, Farrington argued that the trial judge erred by refusing to admit the evidence. The Third Circuit, however, concluded

that the trial judge did not abuse his discretion when he determined that the evidence lacked relevance. Id.  The court found that "evidence that Grosvenor committed other frauds without Farrington's help does not render it less likely that he received Farrington's cooperation here." Id.  The court further explained that the trial court's concern "about 'all kinds of little, mini trials'" implicated Rule 403, and the trial court's statement that Farrington could not prove that the other frauds were "the same thing" as the crime charged spoke "to the relevance of the proposed evidence." Id.  The Third Circuit finally noted that "evidence of other frauds executed differently could needlessly confuse the jury's understanding of the crimes with which Farrington was charged." Id.

This Court finds that the same reasoning applies to the case at bar.  Evidence that Waltzer committed other frauds without Georgiou's cooperation does not render it less likely that Waltzer received Georgiou's help in the fraud charged.  Moreover, Georgiou has not suggested that Waltzer's other frauds were "the same thing" as the fraud charged.  Therefore, this Court finds that Georgiou has failed to meet his burden of showing the relevance of the material sought.  Moreover, even if Georgiou were able to establish relevance, this Court would nevertheless be inclined to exclude the evidence on the basis that its probative value is "substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by considerations of undue delay [or] waste of time."  Fed. R. Evid. 403.

An appropriate Order follows.