IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 09-88 |
| | : | |
| GEORGE GEORGIOU | : | |
| | : | |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                       **MARCH 18, 2011**

Presently before this Court is Defendant George Georgiou's ("Georgiou") "Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33, Brady v. Maryland[1] and The Jencks Act."[2] ("Third Motion for New Trial").[3] For the reasons set forth below, this Motion is denied.

### I.     FACTS AND BACKGROUND

On February 12, 2010, following a three-week trial, a jury found Georgiou guilty of one count of conspiracy, four counts of securities fraud and four counts of wire fraud.[4] At trial, the

---

[1] See 373 U.S. 83 (1963).

[2] The Jencks Act requires that once a witness called by the United States has testified on direct examination, "the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C.A. § 3500(b).

[3] As will be explained, infra, although Georgiou refers to the instant Motion as his "Second Motion for New Trial," it is actually his third Motion for a New Trial, and we will refer to it as such.

[4] A more detailed account of the underlying facts of this case can be found in this Court's December 7, 2009 Memorandum, United States v. Georgiou, No. 09-88, 2009 WL 4641719 (E.D. Pa. Dec. 7, 2009), and September 29, 2010 Memorandum, United States v. Georgiou, No. 09-88, 2010 WL 3825700 (E.D. Pa. Sept. 29, 2010).

Government offered the testimony of its cooperating witness, Kevin Waltzer ("Waltzer"), who, at the Government's direction, had recorded numerous conversations with Georgiou and him in 2007 and 2008. (Trial Tr. vol. 11, 274, Feb. 8, 2010.)

On May 7, 2010, Georgiou filed a "Supplemented and Amended Motion for New Trial Pursuant to Rule 33." On August 20, 2010, Georgiou filed a Motion to Compel, seeking:

> an Order disclosing and unsealing, subject to the continuing confidentiality provisions of any applicable protective orders, certain documents filed in connection with the sentencing of government witness Kevin Waltzer which have yet to be produced, for disclosure of Brady material concerning Waltzer's mental health and record of substance abuse, and disclosure of, or authorization to subpoena if not in the government's possession, additional mental health and substance abuse records, as may relate to information contained in the Waltzer sentencing and/or Brady materials.

(Def.'s Mot. to Compel at 1.) On September 20, 2010, Georgiou filed his Second Motion for New Trial; on that same day, this Court entered an Order denying Georgiou's Motion to Compel. On September 29, 2010, Georgiou filed a Motion for Reconsideration of this Court's denial of the Motion to Compel. In addition, on that same date, this Court denied Georgiou's "Supplemented and Amended Motion for New Trial Pursuant to Rule 33." (See Georgiou, No. 09-88, 2010 WL 3825700 at * 1.)

Those Motions focused on various allegations concerning the mental health and record of substance abuse of Waltzer.[5] On March 12, 2010, Waltzer was sentenced before United States District Court Judge Stewart Dalzell in Criminal Number 08-552. In connection with the sentencing, Waltzer's counsel submitted a report (the "Lizzi Report") by Dr. Luciano Lizzi ("Dr. Lizzi"), a psychiatrist and Clinical Professor at the University of Pennsylvania Medical School,

---

[5]We include in our procedural history this information regarding Waltzer's mental health because Georgiou has raised an issue concerning Waltzer's mental health in the instant Motion.

2

who Waltzer had been seeing since August 2007, shortly after he began cooperating with the Government. The Lizzi Report indicated that Waltzer suffered from bipolar disorder and that he had abused cocaine and alcohol during his illegal activities between 1999 and 2006. Dr. Lizzi stated that it was his opinion that "these mental disorders, either individually, or in concert, so affected Mr. Waltzer's capacity to reason and control his impulses that they significantly contributed to his" criminal behavior during that time. (Def.'s Mot. to Compel, Ex. B.) The Lizzi Report further indicated that Waltzer had been examined and/or treated by several other psychiatrists and had been prescribed numerous prescription medications, including Paroxetine (Paxil), Seroquel, Xanax, Elavil, Trilafon, Buspar and Klonopin.[6] (Id.)

Following Waltzer's sentencing, counsel for Georgiou filed a "Motion of Defendant for Disclosure of Sealed Sentencing Documents as to Kevin Waltzer and for Disclosure of Brady Material," seeking the Lizzi Report, Waltzer's letter to the sentencing court and "all information, including information contained within the [Presentence Investigation Report], related to Kevin Waltzer's use of cocaine or other drugs and diagnosis or treatment for any mental disease, disorder or defect, includ[ing] bipolar disorder, including information concerning the knowledge of any member of the prosecution team about these subjects." (Def.'s Mot. for Disclosure at 2.) Georgiou's Motion was subsequently submitted to Judge Dalzell. On July, 20, 2010, Judge Dalzell granted Georgiou's Motion and ordered:

> The following documents shall be UNSEALED, and defense counsel in Criminal No. 09-88 shall treat these documents as confidential and shall not file them on the public record, absent an Order of Court to the contrary: (a) The psychiatrist's

---

[6] Waltzer also submitted a letter to the sentencing court in which he stated, inter alia, that from 2001 through 2006, he "was addicted to cocaine and living [his] life with abandon, recklessness, and wanton disregard for the laws." (Id., Ex. C.)

3

> report; (b) [Waltzer's] letter to the Court referred to at his sentencing hearing of March 12, 2010; and (c) All information, including that contained in the Presentence Investigation Report, related to defendant's use of controlled substances and diagnosis or treatment for any mental disease, disorder or defect.

United States v. Waltzer, No. 08-552 (E.D. Pa. July 20, 2010). On August 9, 2010, Judge Dalzell amended his Order and its confidentiality provisions to allow the defense's psychiatric expert, Dr. Peter Breggin ("Dr. Breggin"), to review the sentencing materials concerning Waltzer's mental health and use of controlled substances. (Def.'s Mot. to Compel, Ex. E.)

Attached to Georgiou's Second Motion for New Trial was a report by Dr. Breggin (the "Breggin Report"). In the Breggin Report, Dr. Breggin analyzed various documents relating to Waltzer's sentencing hearing, including the Lizzi Report, the Presentence Investigation Report and Waltzer's letter to the sentencing court. Dr. Breggin stated, inter alia, that "[g]iven Mr. Waltzer's bipolar disorder, cocaine abuse, alcohol abuse, and exposure to Paxil, Xanax and other psychiatric drugs in the period 1995 to 2006-2007, he would be unable to accurately testify about events involving Mr. Georgiou during that period of time. At the least[,] he is a very unreliable individual." (Breggin Report at 18, Sept. 16, 2010.)

This Court filed a sealed Memorandum and Order on November 9, 2010 ("November 9, 2010 Memorandum"), denying Georgiou's Second Motion for a New Trial and Motion for Reconsideration. Georgiou was, subsequently, sentenced by this Court on November 19, 2010, to a total of 240 months imprisonment and ordered to pay restitution in the amount of $55,832,398.00. Georgiou filed this instant Third Motion for New Trial on December 23, 2010, and also filed a Notice of Appeal in the Third Circuit Court of Appeals on December 29, 2020 appealing our denials of his prior Motions for a new trial. Georgiou has requested the Court of

Appeals to stay this appeal until the instant Motion is resolved by this Court. In a letter dated March 9, 2011 to this Court, the Government wrote that "While the government believed that the most appropriate procedural course for the defendant to take was to file his Notice of Appeal only after this Court ruled so that the case would not be pending in both courts simultaneously," it recognized that Rule 4(b)(3)(B) of the Federal Rules of Appellate Procedure "may allow this Court to consider his motion." The Government stated further that "since the motion will have to be resolved on the merits at some point in time, the government requests that this Court decide the matter on the merits, rather than deciding the matter on procedural grounds." We grant such request and will decide the Motion on its merits.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "Whether to grant a Rule 33 motion lies within the district court's sound discretion." United States v. Ortiz, 182 F. Supp. 2d 443, 446 (E.D. Pa. 2000) (citation and quotation marks omitted). In evaluating a Rule 33 motion, the court does not view the evidence favorably to the government, but rather, exercises its own judgment in evaluating the government's case. United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002). Nevertheless, "[t]he burden is on the defendant to show that a new trial ought to be granted." United States v. Clovis, No. 94-11, 1996 U.S. Dist. LEXIS 20808, at *5 (D.V.I. Feb. 12, 1996).

A court must grant a motion for new trial if it finds that there were cumulative errors during the trial that, "'when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" United States v. Copple, 24 F.3d 535, 547

5

n.17 (3d Cir. 1994) (quoting United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993)). However, even if the court "believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted.'" United States v. Silveus, 542 F.3d 993, 1004-05 (3d Cir. 2008) (quoting Johnson, 302 F.3d at 150).

## III.    DISCUSSION

**1.    Electronic Evidence**

In this Motion, Georgiou outlines the series of communications between his trial counsel and the Government requesting all "Brady material, all emails, PINs, documents, and recordings that Waltzer had in his possession or provided to the government directly or indirectly involving him." (Third Motion for New Trial, Ex. C- H.)  The Government responded to trial counsel that it had produced "all Brady and Giglio[7] material in our possession relating to all government witnesses . . . ." (Third Motion for New Trial, Ex. I.)  Georgiou's current counsel, Michael Bachner, Esq. ("Bachner"), states in a Declaration that from the cell phone records that the Government produced, the defense was able to discern that the Government and Waltzer were exchanging phone calls, emails, and/or PINs and text messages, with particular frequency around the time of the sting operation.  (Bachner Decl. at ¶¶ 3-4.)    Georgiou asserts that, consequently, his defense team requested any additional phone-related discovery that was available, and any instructions that Waltzer received around the times he recorded conversations with him. Georgiou further maintains that his counsel "specifically pressed the government on, among

---

[7]See Giglio v. United States, 450 U.S. 150 (1972).

other things, what it meant by all Waltzer phone records 'in its possession'; whether additional records would be forthcoming; the instructions given to Waltzer during his undercover operation; and whether Waltzer ever failed to follow instructions." (Third Motion for New Trial, Ex. K.) Georgiou asserts that in response, the Government stated that it had "provided all Waltzer phone records in our possession"; was "not aware of any Waltzer phone records that will become available"; and has "no additional discoverable information to provide concerning" the defense's request for instructions to Waltzer. (Third Motion for New Trial, Ex. K.)

Georgiou states further that in his trial counsel's final discovery letter to the Government, counsel pointed out that certain communications reflected in Waltzer's phone records still had not been produced. Specifically, counsel wrote:

> You claim Mr. Waltzer has never received any written instructions from the government. We understand, however, that Mr. Waltzer exchanged e-mails and 'PINs' with Government agents, as well as text messages. We submit any instructions given Waltzer, written or oral and any deviation from those instructions, is producible under Brady. Please advise . . . .
>
> You previously provided us with printouts of PIN communications between Mr. Waltzer and Mr. Georgiou that were forwarded to Special Agent Cory Riley. Please explain to us how those PINs were printed and if they were edited in any way whatsoever before being produced to us.
>
> Please clarify what discretion Mr. Waltzer was given about which PINs and emails he must forward to Agent Riley related to Mr. Georgiou.
>
> Please confirm which agent of the government possessed PIN # 31AEC383.
>
> Please clarify if you obtained a mirror image of Mr. Waltzer's blackberry, cell phone and computer and other electronic devices and decline to provide to us, or, if the data from the devices has

> never been captured. Please advise if Mr. Waltzer's electronic devises were ever forensically examined by the government and please provide any and all such reports . . . .
>
> You have not produced any Georgiou e-mails originating from Mr. Waltzer and related to this case from July 2007 through September 2008.

(Third Motion for New Trial, Ex. L.) Georgiou asserts that the Government did not respond to all of his counsel's inquiries, however, the Government indicated "that it was providing 'copies of all pins and emails between Waltzer and the defendant during the time of Waltzer's cooperation in this case,' and confirmed that 'Pin # 31AEC38E was used by Agent Riley.'" (Third Motion for New Trial, Ex. M.) The Government then stated that "As to the other requests and inquiries in your letter, we have provided to you all Brady materials, and Giglio materials (in connection with Kevin Waltzer and any other government witness), that are in our possession or control." (Id. at 3.)

Georgiou asserts that it is undisputed that Waltzer, at a minimum, traded PINs and/or text messages and emails with FBI Agent Corey Riley and others during his stint as an undercover, cooperating witness. Georgiou contends that the Government, however, produced only a few of those communications during discovery, claiming that it either did not have certain of those communications in its custody or control, or that the defendant was not entitled to them. Georgiou argues that despite the Government's claims, it is now apparent that the missing electronic data and messages were within the custody and control of the Government as a matter of fact and law, and that the Government violated its Jencks Act, and/or Brady obligations concerning those messages. We, however, find no merit to this claim, and determine that it must be dismissed for several reasons.

8

## A. "Newly Discovered" Evidence

Federal Rule of Criminal Procedure 33 provides:

> (a) **Defendant's Motion**. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so desires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
>
> (b) **Time to File.**
>
> > (1) **Newly Discovered Evidence**. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
> >
> > (2) **Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33.

We first note that it is apparent in this case, pursuant to Rule 33, that Georgiou's only basis for relief at this late stage would be a claim(s) based on newly discovered evidence. Accordingly, Georgiou has couched this "electronic evidence" claim as a "newly discovered evidence" claim, otherwise his Motion would be untimely as his Third Motion for New Trial was filed long after the 14-day deadline as extended by this Court.[8]

In interpreting Rule 33, the Third Circuit has held that a district court may grant a new trial on the basis of "newly discovered evidence" if five requirements are met:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer

---

[8]However, as noted, infra, his second claim in the instant Motion concerning Brady violations has not been presented as a "newly discovered evidence" claim.

> diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006); United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976); see also Gov't of the Virgin Islands v. Lima, 774 F.2d 1245, 1250 (3d Cir. 1985); United States v. Saada, 212 F.3d 210, 216 (3d Cir.2000). Although the decision to grant or deny a motion for a new trial lies within the discretion of the district court, the movant has a "heavy burden" of proving each of these requirements. See Saada, 212 F.3d at 216. Moreover, the failure to satisfy any one of the elements is a sufficient basis to deny a motion for a new trial. United States v. Jasin, 280 F.3d 355, 365 (3d Cir. 2002). We find that Georgiou has failed to establish several of these elements.

First, we find that the alleged evidence is not "newly discovered," and also that Georgiou's counsel failed to exercise "diligence" in requesting any alleged missing electronic evidence. It is "well settled that evidence is not 'newly discovered' when it was known or could have been known by the diligence of the defendant or his counsel." Jasin, 280 F.3d at 362 (quoting United States v. Bujese, 371 F.2d 120, 125 (3d Cir. 1967).

In support of his contention that such alleged evidence is "newly discovered," Georgiou asserts that the recent decision in United States v. Suarez, No. 09-932, 2010 WL 4226524, * 1 (D.N.J. Oct. 21, 2010), "now makes it abundantly clear that the text messages, email, and PINs requested by the defense in this case were improperly suppressed and that any spoilation of that evidence warranted suppression of certain evidence Kevin Waltzer provided against the defendant, if not all of his testimony." (Third Motion for New Trial at 8-9.)

10

In Suarez, the district court held a series of hearings concerning the government's failure to produce certain electronic text messages cell phone records requested by the defense, which were related to the government's use of a cooperating witness to record the defendant's conversation. During the investigation, and during his meetings with the defendant, the cooperating witness exchanged several SMS or "text" messages with FBI agents directing the investigation. 2010 WL 4226524 *1. Because the government never responded to the defense attorney's discovery request for those messages, the defense moved to compel their disclosure. The government claimed that it was unable to produce any of the test messages sent by the "cooperating witness to the agents because the witness had used a personal cellular telephone, and his wireless carrier retained text messages for a period of only 3 to 5 days from the date of creation." Id. Additionally, the government claimed that it could not produce text messages sent by the FBI agents to the cooperating witness for certain periods because the "FBI retained text messages of its agents only for so long as limited storage space on its severs allowed." Id. The court held that the "text" messages were "statements" covered by the Jencks Act. Id. at 5. The court also held that the test messages were "indisputably" within the government's possession and control, id. at 5, 8, and had a "duty to preserve the Jencks material contained in the text messages." Id. at 6. The Suarez court concluded that the government should be sanctioned because it: (1) controlled the text message information; (2) actually suppressed the test messages; (3) the destroyed evidence was relevant to the claims and defenses at trial; and (4) it was at least reasonably foreseeable that communications between the cooperating witness and the

11

government agents instructing him during the investigations would be discoverable. Id. at 7-9.[9]

We, however, do not find Suarez analogous to the instant case. Here, Georgiou's trial counsel possessed the telephone records that he claims show the missing communications. With those records, Georgiou's counsel could have pursued discovery of those items with the Government or through a motion to the Court, but chose not to do so, instead, accepting the Government's explanation that no such relevant and discoverable communications existed. Georgiou cannot now claim through new counsel that there is newly discovered evidence because he did not understand that such communication could be preserved. More important, in contrast to Suarez, the Government here did preserve the electronic communications that Georgiou concedes were provided and never claimed that it had additional discoverable electronic communications, but failed to preserve them.

In addition, Georgiou simply speculates that the Government somehow failed to produce communications from law enforcement agents to Waltzer instructing him how to behave during his undercover contacts with Georgiou, and communications from Waltzer to the agents concerning his observations and assessment of the undercover meetings with Georgiou. Georgiou offers little or no evidence to establish that the Government failed to produce such communications. What Georgiou offers as proof of his assertions is Bachner's Declaration in which he claims to have analyzed telephone records that the Government produced in discovery and concluded that some unidentified communications were missing and that they showed a "pattern of instructions between Waltzer and his government handlers for purposes of guiding

---

[9] It is notable that the sanction that the Suarez court imposed for the government destroying the discoverable evidence was an adverse inference instruction to the jury regarding the missing text messages. Id. at 10.

Waltzer during the undercover sting operation against Mr. Georgiou." (Bachner Decl. at ¶ 3.) This, however, is pure speculation. Bachner does not explain or cite to any records that would show missing communications or, more significantly, missing communications relating to instructions to Waltzer about his conduct in dealing with Georgiou.

Moreover, the Government has repeatedly maintained that no such communications exist or ever existed, and that it produced all discoverable communications between Waltzer and the federal agents. (Government's Resp. at 3.) The Government states that it has:

> reviewed records of electronic communication and has queried the agents involved in the case. Based on this review, counsel has confirmed, as it has represented throughout this case, that Waltzer was not provided with written instructions via electronic communications concerning the undercover investigation of Georgiou. During the undercover operations, Waltzer received his instructions orally. Likewise, Waltzer did not communicate through written electronic communications his impressions of meetings with Georgiou. The electronic communications that Waltzer had with the agents generally involved forwarding electronic communications with Georgiou. Those communications, as defense concedes, were provided during discovery and were presented at trial.

(Id. at 4.) Thus, because Georgiou has failed to produce any evidence that such electronic communications exist or existed, we find that it cannot be found to be "newly discovered" evidence.

**B. "Merely Impeaching"**

Furthermore, even if any evidence relating to communications between Waltzer and the agents constituted "newly discovered" evidence, it would be "merely impeaching." Newly discovered evidence is "merely impeaching when it has 'no exculpatory connection' to the defendant's offense conduct, and does not support an inference that the defendant was "innocent of the charges for which [he was] convicted." Saada, 212 F.3d at 216.

The Third Circuit stated in United States v. Quiles that the question to be asked when a defendant in a criminal case moves for a new trial based on newly discovered impeachment evidence is whether:

> there is a strong exculpatory connection between the newly discovered evidence and the evidence presented at trial, or whether the newly discovered evidence, though not in itself exculpatory, throws severe doubt on the truthfulness of the critical inculpatory evidence that had been introduced at the trial; if the answer is affirmative, then a defendant may be entitled to a new trial even though he relies on evidence that could be classified as impeachment evidence, and if the answer is negative, then the defendant is relying on mere impeachment evidence and will not be entitled to a new trial on its basis.

618 F.3d 383, 393 (3d Cir. 2010). As noted, Georgiou's alleged new evidence relates to communications between Waltzer and the FBI agents during his undercover operations. Georgiou asserts without explanation that he could have used these alleged communications to further cross-examine Waltzer. However, we find that such evidence, even if it did exist, would have been "merely impeaching" and cumulative. As we discussed in our most recent Memorandum denying Georgiou's Second Motion for a New Trial, Waltzer was subjected to extensive and vigorous attacks on his credibility. We stated that substantial evidence was presented at trial which detailed Waltzer's history of misconduct and his alleged bias for the Government. For example, at trial, Waltzer admitted to a $40 million fraud to which he pled guilty under a cooperation plea agreement. This evidence provided ample opportunity for Georgiou to attack Waltzer on the basis that he was untrustworthy and biased for the Government. Indeed, counsel for Georgiou thoroughly cross-examined Waltzer on his history of deception and alleged bias for the Government. (See Trial Tr. vols. 4-5, 47-177, Jan. 26, 27,

14

2010.) (November 9, 2010 Memorandum at 11-12.)[10]

## C. "Brady" Evidence

Georgiou also attempts to claim that the Government violated its obligation under Brady in not disclosing said electronic evidence. We first point out, however, that this Brady claim was not timely filed under Fed. R. Crim. P. 33 and could be rejected on that basis alone. We, nonetheless, address this issue on its merits below, and find that Brady was not violated.

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). To establish a due process violation under Brady, a defendant must make three showings: "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or to punishment." United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005).

In United States v. Bagley, the Supreme Court explained its holding in Brady, stating that evidence favorable to the defense is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than

---

[10]It must also be noted that the last requirement under Federal Rule of Criminal Procedure 33 upon which a district court can grant a new trial on the basis of "newly discovered evidence" is that in a new trial the newly discovered evidence "would probably produce an acquittal." Cimera, 459 F.3d at 458. For the reasons discussed, infra, considering the overwhelming evidence against Georgiou, we also find that such new evidence would not " probably produce an acquittal." Id.

15

not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995). In other words, a "reasonable probability" of a different result is shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678.

Here, for the reasons already discussed above, with regard to Brady's first element, we find that the alleged electronic evidence was not suppressed as Georgiou has not offered any evidence establishing that the Government suppressed such evidence. In addition, even if this evidence existed and the Government was obligated under Brady to disclose such, we find that Georgiou has failed to show that there is a reasonable probability that, had such evidence been disclosed to the defense, the result of his trial would have been different. See Bagley, 473 U.S. at 682. As we did in our Memorandum denying Georgiou's Second Motion for a New Trial, we again point out that the Government's evidence against Georgiou was overwhelming. (See November 9, 2010 Memorandum at 10.) The Government's evidence against Georgiou included voluminous recordings, emails, financial records and other evidence that demonstrated that Georgiou had committed the crimes charged. All of which was consistent with Waltzer's testimony. "The testimony of [a witness] must be considered in the totality of the circumstances and all of the evidence introduced at trial." United States v. Hankins, 872 F. Supp. 170, 174-75 (D.N.J. 1995) (citing Bagley, 473 U.S. at 628). Waltzer's version of the relevant events conformed with the staggering physical evidence in this case. As such, we conclude that even if the jury had found Waltzer to be unreliable, Georgiou's trial nevertheless resulted in a verdict worthy of confidence, considering the totality of the circumstances and all of the evidence

introduced at trial. (See November 9, 2010 Memorandum at 10-12.)

2.      **Waltzer's Mental Health**

As we had in our most recent Memorandum denying Georgiou a new trial, we again address an issue concerning disclosure of information regarding Waltzer's mental health. In this Third Motion for New Trial, Georgiou also asserts that the Government violated its disclosure obligations under Brady by failing to produce Waltzer's statements about his "criminal activities" made in the course of his mental health treatment with his psychiatrist, Dr. Lizzi.[11] Also once again, the Government maintains that it never did have such records, nor does it presently have such. Indeed, as it argued in its response to Georgiou's Second Motion for a New Trial, the Government again asserts that it had not even been aware of Dr. Lizzi at the time of trial. The Government also states that the only information in its possession concerning Waltzer's mental health was Waltzer's guilty plea colloquy before the Honorable Stewart Dalzell. During the plea, Judge Dalzell asked Waltzer whether, in the approximately 1.5 years before the plea hearing on January 28, 2009, Waltzer had seen a mental health provider. Waltzer answered that he had "in connection with some of the criminal activities that brought me here today and also in connection with depression and anxiety." (Guilty Plea Tr., 6-7, Jan. 28, 2009.)

Georgiou asserts that "despite the government's earlier opposition to the production of the statements, it has put those statements directly at issue by calling his treating psychiatrist as an expert in support of its opposition to defendant's prior Brady and Jencks Act claims. By

---

[11]We again point out that this Brady claim was not timely filed under Rule 33, and could be dismissed on this basis alone. We, nonetheless, address it on its merits. We also again note that Georgiou did not even attempt to couch this claim as "newly discovered" evidence in this Motion as he had regarding the electronic evidence claim.

doing so, the government has waived any possible objection to the production of Waltzer's statements to Dr. Lizzi." (Third Motion for New Trial at 18.) The Government counters that it did not use Dr. Lizzi as part of its prosecution team, and did not even call him as an expert at trial. In fact, the Government used Dr. Lizzi to clarify in writing the analysis set forth in a report he had prepared for Waltzer's sentencing hearing to support its response to an earlier post-trial motion filed by Georgiou. (Resp. to Third Motion for New Trial at 5.)

Georgiou cites Synthes Spine Co. v. Walden, 232 F.R.D. 460 (E.D. Pa. 2005) and Kelso U.S. Inc. v. Pharmacia Corp., 213 F.R.D. 176, 178-79 (D. Del. 2003) in support of its argument. However, these two cases having no relevance to the instant case. In Synthes, the court held that the plaintiff was required to disclose to defendants notes of a meeting that plaintiff's expert created in his role as testifying expert, regardless of whether such notes contained information that fell under protection of attorney-client privilege or work product privilege because the notes might contain information bearing on the expert's credibility, his report, and his trial testimony. 232 F.R.D. at 463. It is clear that the instant case is not analogous to Synthes because Dr. Lizzi was never used as an expert before trial or at trial. Rather the Government only asked him to clarify in writing the analysis set forth in a report he had prepared for Waltzer's sentencing hearing in order to support its response to an earlier post-trial motion filed by Georgiou.

Likewise, Kelso has no relation to the instant case. In Kelso, the court ruled that the defendant was required to produce documents protected by the attorney-client privilege that it provided to an expert witness deposed by the plaintiff, notwithstanding that after the deposition, the defendant decided to change the designation of the witness from testifying to non-testifying expert. The court determined that the defendant could not undo its waiver of the privilege which

occurred when it provided the documents to the expert.  213 F.R.D. at 178-79.  Again, here, the Government never used or intended to use Dr. Lizzi as an expert at trial.  Moreover, Georgiou has failed to offer any other support for his assertion that Government somehow violated its disclosure obligations under Brady by failing to produce Waltzer's statements about his "criminal activities" made in the course of his mental health treatment with Dr. Lizzi.  Moreover, as discussed above, in light of the staggering evidence against Georgiou, we find that even if the Government possessed such evidence regarding statements Waltzer made to Dr. Lizzi, Georgiou has failed to show that there is a reasonable probability that, had such evidence been disclosed to the defense, the result of his trial would have been different.  See Bagley, 473 U.S. at 682.  Accordingly, for the reasons discussed above, we deny Georgiou's Third Motion for New Trial.

       An appropriate Order follows.