**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 09-0088** |
| | : | |
| **GEORGE GEORGIOU,** | : | |
| *Defendant, pro se.* | : | |
| | : | |

NITZA I. QUIÑONES ALEJANDRO, J. SEPTEMBER 28, 2026

# MEMORANDUM OPINION

## INTRODUCTION

Defendant George Georgiou was convicted of securities fraud, wire fraud, and conspiracy in 2010. Following a series of post-trial motions and appeals, Defendant pursued *habeas* relief in 2017, which was denied. Defendant now seeks relief from that judgment, raising a litany of claims of defects in the *habeas* proceedings. Before the Court are two motions filed by *pro se* Defendant: (1) a motion for relief from judgment pursuant to Federal Rule of Civil Procedure, ("Rule"), 60, to which the United States filed no response; and (2) a motion to grant the motion for relief from judgment, as unopposed, to which the United States filed a response in opposition. For the reasons set forth, Defendant's motions are denied.

## BACKGROUND

This case has a long procedural history, which dates back fifteen years. Briefly, the facts relevant to the underlying motions are as follows:

> On February 12, 2010, following a federal jury trial, Defendant was convicted of one count of conspiracy (Count 1), four counts of securities fraud (Counts 2–5), and four counts of wire fraud (Counts 6–9). (Doc. 135; *see also* Doc. 231). Following the disposition of several post-trial motions, on November 19, 2010, the Honorable Robert F. Kelly sentenced Defendant to serve a total of 300 months' imprisonment, followed by three (3) years of supervised release, and ordered to pay $55,832,398 in restitution and a $900 special assessment. (Doc.

227). Judgment was entered on December 14, 2010. (Doc. 231). Defendant filed an appeal and on March 4, 2015, the United States Court of Appeals for the Third Circuit, (the "Third Circuit"), affirmed Defendant's conviction and sentence. (Doc. 296).

On January 26, 2017, Defendant filed, pursuant to 28 U.S.C. § 2255, a *pro se habeas* petition seeking to vacate/set aside/correct his sentence. (Doc. 307). In his petition, Defendant asserted several grounds for relief, including, *inter alia*: *Brady* violations, prejudice caused by prosecutors' conflicts stemming from alleged contact with an informant, and ineffective assistance of counsel. (*Id.*). During the litigation of said petition, in September 2017, Judge Kelly held an evidentiary hearing to supplement the record with respect to the alleged impropriety of the Government's contacts with its informant when investigating Defendant, and with respect to decisions made by Defendant's trial counsel. (Docs. 397, 399, 431). By Order dated August 10, 2017, then-Acting U.S. Attorney Louis D. Lappen, ("AUSA Lappen"), was compelled to testify at the evidentiary hearing as a necessary witness to the Government's interactions with its informant and was, therefore, "disqualified from acting as the Government's attorney at the evidentiary hearing" *only*. (Doc. 413). Following the September 2017 hearing, at which AUSA Lappen appeared as a sworn witness, (Doc. 464), Judge Kelly held additional evidentiary hearings in November, (Docs. 466, 502–503), and early December of the same year, (Docs. 505, 512). By Order dated June 19, 2018, Judge Kelly denied Defendant's § 2255 motion. (Docs. 570–71). Based on its consideration of the evidence, the Court also determined, *inter alia*, that "Georgiou's allegations of wrongdoing by AUSA[] Lappen" were "entirely unsupported by the record." (Doc. 570, at 175).

Following the Court's ruling, on July 19, 2018, Defendant filed a *pro se* motion for reconsideration pursuant to Rule 59(e). (Doc. 583). That motion was denied on August 6, 2018, based on Defendant's failure to raise any of the grounds required by Rule 59(e). (Doc. 592). Over the next two weeks, Defendant submitted a letter and two *pro se* motions, each alleging prosecutorial and/or judicial corruption in the *habeas* proceedings and seeking an appearance before the Court. (Docs. 593–95). These requests were denied on August 20, 2018. (Doc. 600). On September 27, 2018, Defendant filed an appeal, challenging the Court's denial of his Rule 59(e) motion. (Doc. 615). On April 8, 2020, the Third Circuit affirmed the Orders denying Defendant's § 2255 motion and motion for reconsideration. (Doc. 633).

Thereafter, on February 3, 2021, Defendant filed a motion to reduce his sentence. (Doc. 635). After the case was reassigned to the Honorable C. Darnell Jones, (Doc. 636), on March 23, 2021, the Court denied this motion. (Docs. 640–41). A year later, on April 12, 2022, Defendant filed another motion seeking a sentence reduction. (Doc. 670). This motion was denied on June 23, 2022. (Doc. 675). Defendant filed a motion for reconsideration of that denial on July 3, 2022, (Doc. 678), and after the case was reassigned to the undersigning Court, (ECF 682),

on June 6, 2025, the motion was denied. (Doc. 694). On June 18, 2025, Defendant appealed this ruling, challenging, *inter alia*, the denial of his request for a sentence reduction. (Doc. 697). The Third Circuit summarily affirmed the Court's denial of Defendant's motion for a sentence reduction on February 19, 2026. (Doc. 709).

On May 18, 2026, Defendant filed a *pro se* motion for relief from judgment, pursuant to Rules 60(b)(1), 60(b)(3), 60(b)(4), 60(b)(6), and 60(d)(3). (Doc. 710). In said motion, Defendant argues that a cascading series of alleged defects in the litigation of his *habeas* petition combined to prejudice the resolution of his claims. (*See* Doc. 710, at 40). The defects he raises are mainly allegations of prosecutorial misconduct and judicial bias. (*See generally* Doc. 710). Defendant argues that this combination of alleged misconduct constitutes "process capture." (*Id.* at 6). Defendant asserts many claims, including that, during the *habeas* proceedings, AUSA Lappen made misrepresentations to the Court, warranting relief pursuant to Rules 60(b)(3) and Rule 60(d)(3) for fraud on the Court, (*id.* at 40–41, 62–64, 70–71); that Judge Kelly was biased against him during the § 2255 proceedings, rendering the Court's judgment in the same "void" and warranting relief pursuant to Rule 60(b)(4), (*id.* at 42, 73–74); that the motion denying his earlier claim of judicial bias was mistakenly denied, warranting relief pursuant to Rule 60(b)(1), (*id.* at 14–15, 74); and that these, and other defects, collectively warrant the Court's exercise of discretion, pursuant to Rule 60(b)(6) or the Court's "inherent equitable power," to grant Defendant relief from the Court's judgment denying his § 2255 motion, (*id.* at 71–73, 75). Defendant requests that this Court vacate the denial of his § 2255 motion, (Doc. 570), order an evidentiary hearing to assess his claims in the instant motion, and grant any other relief the Court deems appropriate. (Doc. 710, at 84).

The Government did not file a response to Defendant's motion for relief and, on August 21, 2026, Defendant filed a motion seeking that his Rule 60(b) motion be granted, as unopposed, pursuant to Local Rule of Civil Procedure, ("Local Rule"), 7.1(c). (Doc. 712). On August 24, 2026, the Government filed a response to said motion, (Doc. 714), and argued that (a) it was not required to respond to Defendant's motion because that motion is subject to the Rules Governing Section 2255 Proceedings, which do not require responses to motions absent direction of the Court, and (b) requested sixty days to file a response to Defendant's Rule 60(b). (*Id.*). Defendant filed a reply to the Government's response on August 28, 2026, and appeared to concede that the Government was not required to respond to his earlier motion under the applicable rule but, nevertheless, argued that the Government should not be given 60 days to reply because the Rules Governing Section 2255 Proceedings, (the "§ 2255 Rules"), contemplate prompt action. (Doc. 716). Defendant further argues that the Government's reply must address the substance of his Rule 60(b) motion, and that AUSA Lappen should be disqualified from litigating this motion because Defendant's arguments include allegations of Mr. Lappen's misconduct. (*Id.*).

Each of Defendant's motions will be considered in turn.

**MOTION TO GRANT THE RULE 60 MOTION AS UNOPPOSED**

In his motion to consider his Rule 60(b) motion unopposed, Defendant initially appeared to argue that his Rule 60(b) motion should be granted as unopposed, pursuant to Local Rule 7.1(c), because the Government failed to file a timely response. Local Rule 7.1(c) provides, in reference to general motion practice, that "[u]nless the Court directs otherwise, any party opposing [a] motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days," and that "[i]n the absence of a timely response, the motion may be granted as uncontested." L. R. Civ. P. 7.1(c). Here, the Government argues that Rule 4 of the § 2255 Rules applies instead because Defendant's Rule 60(b) motion "is part of a proceeding under Section 2255." (Doc. 714).

Local Rule 7.1(c) applies to "[e]very motion not certified as uncontested." L. R. Civ. P. 7.1(c). By its terms the Court *may*, but need not, grant a motion as unopposed, "except as provided under Federal Rule of Civil Procedure 56, or otherwise prohibited by law." *Id.* Notably, Rule 56 is inapplicable here, and it is unclear that any other law prevents this Court from granting Defendant's motion as unopposed. By its terms, therefore, Local Rule 7.1(c) appears to apply to Defendant's Rule 60(b) motion.

However, Rule 1 of the § 2255 Rules makes clear that those rules "govern a motion filed in a United States district court under 28 U.S.C. § 2255." Defendant's motion was not filed clearly under § 2255. Instead, it seeks relief from judgment pursuant to Rules 60(b) and 60(d). However, the Supreme Court has recognized that some Rule 60(b) petitions, by virtue of the claims they raise, should be treated as *habeas* petitions. *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005); *see also In re Nailor*, 487 F.3d 1018, 1022–23 (6th Cir. 2007) (extending the reasoning of *Gonzalez* to § 2255). Where "a Rule 60(b) motion attacks, not the substance of the federal court's resolution

of a claim on the merits, but some defect in the integrity of the federal *habeas* proceedings," it is proper to "allow[] the motion to proceed as denominated," *i.e.*, as a Rule 60(b) motion. *Gonzalez*, 545 U.S. at 534. Defendant's Rule 60(b) motion purports to do exactly that — attack the integrity of the § 2255 proceedings. (Doc. 710, at 6). Whether his motion truly is a Rule 60(b) motion attacking the integrity of the § 2255 proceedings, or is instead a successive *habeas* petition in disguise, is discussed below. For present purposes, however, the Court notes that on the face of the instant motion, the Rules Governing Section 2255 Proceedings for the United States District Courts do not plainly, by their text, apply.

The Court finds that it need not decide whether Local Rule 7.1(c) or the § 2255 Rules govern Defendant's motion, for the Court would reach the same conclusion under both. Pursuant to Rule 5(a) of the § 2255 Rules, a "respondent is not required to answer the motion unless a judge so orders." If that rule governs, then Defendant's motion fails. And if Local Rule 7.1(c) governs this issue, then the Court has *discretion* to grant Defendant's motion as unopposed. However, on the facts before the Court, it declines to do so. Although it is questionable whether the § 2255 Rules govern Defendant's Rule 60(b) motion on its face, the Government's belief in their applicability was plausible, indicating that the Government's failure to respond was based on a good-faith belief in its interpretation. This is further demonstrated by the fact that, once the Defendant filed the instant motion to grant as unopposed, the Government responded promptly. The Court would not find it just to grant Defendant's motion as unopposed based on the Government's good-faith misunderstanding. Moreover, as will be explored below, Defendant's underlying Rule 60 motion is deficient. The Court declines to exercise its procedural discretion under Local Rule 7.1(c) to grant a motion that would otherwise fail on the merits. Accordingly,

without deciding which rule governs, Defendant's motion to grant the Rule 60 motion as unopposed is denied.

**MOTION FOR RELIEF PURSUANT TO RULE 60**

In his Rule 60 motion, Defendant argues that a cascading series of alleged defects in the litigation of his *habeas* petition combined to prejudice the resolution of his claims. (*See* Doc. 710, at 40). The defects raised are mainly allegations of prosecutorial misconduct and judicial bias, *to wit*: that, during the *habeas* proceedings, AUSA Lappen made misrepresentations to the Court, warranting relief pursuant to Rules 60(b)(3) and Rule 60(d)(3) for fraud on the Court, (*id.* at 40–41, 62–64, 70–71); that Judge Kelly was biased against him during the § 2255 proceedings, rendering the Court's judgment in the same "void" and warranting relief, pursuant to Rule 60(b)(4), (*id.* at 42, 73–74); that the motion denying his earlier claim of judicial bias was mistakenly denied, warranting relief pursuant to Rule 60(b)(1), (*id.* at 14–15, 74); and that these, and other defects, collectively warrant the Court's use of discretion, pursuant to Rule 60(b)(6) or the Court's "inherent equitable power," to grant Defendant relief from the Court's judgment denying his § 2255 motion, (*id.* at 71–73, 75). Defendant requests that this Court vacate the denial of his § 2255 motion, (Doc. 570), which the Third Circuit had reviewed and affirmed, order an evidentiary hearing to assess his claims in the instant motion, and grant any other relief the Court deems appropriate. (Doc. 710, at 84).

As the Court will explore below, Defendant's claims fail for two reasons: first, his motion constitutes a successive *habeas* petition filed without first obtaining leave of the Third Circuit Court of Appeals; and, second, even if his motion were a true Rule 60 motion, the claims raised lack the support necessary to warrant relief and, in many cases, are affirmatively contradicted by the record.

## ***I. Successive Habeas Petition***

Defendant's claims fail for various reasons, including that they are brought through a motion that, while nominally filed pursuant to Rule 60, is a successive *habeas* petition filed without leave from the Court of Appeals.

### *A. Legal Standard*

"[S]ince the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), second or successive § 2255 motions are barred unless they rely on either 'newly discovered evidence,' [28 U.S.C.] § 2255(h)(1), or 'a new rule of constitutional law,' [*id.*] § 2255(h)(2)." *Jones v. Hendrix*, 599 U.S. 465, 469 (2023). To ensure that petitioners comply with these requirements, "AEDPA created a statutory 'gatekeeping mechanism' for second or successive habeas petitions." *In re Hoffner*, 870 F.3d 301, 306 (3d Cir. 2017) (quoting *Felker v. Turpin*, 518 U.S. 651, 657 (1996)). "For a federal prisoner, . . . a 'second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals.'" *Id.* (quoting 28 U.S.C. § 2255(h)). The relevant portion of § 2244 "requires a petitioner to 'move in the appropriate court of appeals for an order authorizing the district court to consider' a second or successive habeas petition." *Id.* (quoting 28 U.S.C. § 2244(b)(3)(A)). Only with the authorization of the Court of Appeals may a petitioner file a successive *habeas* petition. *See id.* at 307–08.

However, a petition need not be filed pursuant to § 2244 or § 2255 to be considered a successive *habeas* petition. *See Gonzalez*, 545 U.S. at 529–31. Depending on their substance, motions seeking relief from a judgment pursuant to Rule 60 will also be treated as *habeas* petitions. *See id.* Specifically, "a Rule 60(b) motion that seeks to revisit the federal court's denial on the merits of a claim for relief should be treated as a successive habeas petition." *Id.* at 534. This is because "alleging that the court erred in denying habeas relief on the merits is effectively

indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* at 532. But where a Rule 60 motion "confines itself not only to the first federal habeas petition, but to a nonmerits aspect of the first federal habeas proceeding," it need not be treated as a *habeas* petition. *Id.* at 534. This is because, "[i]f neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the . . . conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." *Id.* at 533. If a court determines that a motion is a *habeas* petition and it finds that "a 'claim presented in a second or successive habeas corpus application' was also 'presented in a prior application[,]' . . . the claim must be dismissed." *Id.* at 530 (quoting 28 U.S.C. § 2244(b)).

*B. Discussion*

Defendant filed his 2017 *pro se habeas* petition pursuant to § 2255. (Doc. 307, at 2). In that petition, Defendant raised several claims which Judge Kelly summarized as follows:

> Georgiou's § 2255 Motion raises numerous issues, many of which flow from two primary complaints. First, Georgiou contends that unbeknownst to the defense, [a testifying co-conspirator named Kevin] Waltzer was acting as a government cooperator for approximately one year before June 2007 when Waltzer confessed to his crimes and began actively cooperating with the government. Georgiou concludes, from this view of the facts, that numerous legal errors occurred because Waltzer supposedly "was acting for his own purposes, to manufacture leads and evidence" for the government, rather than acting with the "mens rea" of a criminal. . . . In light of these supposed facts, Georgiou believes that numerous charges against him are infirm, and that his attorneys somehow could have used this evidence to impeach Waltzer (and presumably all the other evidence in the case) and change the outcome of the trial.
>
> Georgiou's second general attack on his conviction is that the government acted improperly by allowing Waltzer to speak directly, "one on one," with the AUSAs who were working with Waltzer and government agents in dozens of fraud investigations, including the investigation and prosecution of Georgiou. Again, Georgiou raises numerous claims that flow from this claim of government misconduct, and he suggests that Waltzer and the government attorneys conspired to frame him. Georgiou contends that the AUSAs were witnesses to the fraud and were conflicted in representing the government in light of their involvement with

> Waltzer; that the government should have provided this information to the defense, and that he was prejudiced — *i.e.,* if these errors had not occurred, somehow the result of the proceeding would have been different.

(Doc. 570, at 15–16). To supplement the record and aid the litigation of that petition, Judge Kelly held an evidentiary hearing in September 2017, (Docs. 397, 399, 431), and additional evidentiary hearings in November, (Docs. 466, 502–503), and early December of the same year, (Docs. 505, 512). By Order dated June 19, 2018, accompanied by a 186-page memorandum opinion, Judge Kelly denied Defendant's § 2255 motion on the merits. (Docs. 570–71). Based on the extensive briefing before him, the thorough evidentiary hearing, and the other records before him, Judge Kelly determined Defendant's claims were without merit, finding, *inter alia*: that "the government did not violate Georgiou's rights in connection with the disclosure of evidence concerning Waltzer's alleged cooperation and mental state" because that "information could not have made a difference at trial," (Doc. 570, at 152); that Defendant "cannot establish that any witness, other than himself, committed perjury while testifying either at trial or at the *habeas* evidentiary hearing," (*id.* at 154); and that "[t]he evidentiary hearing record is replete with consistent and credible testimony that the [FBI] agents and AUSAs worked together in guiding Waltzer in the undercover operation, and that there was nothing improper about their handling of Waltzer," (*id.* at 156).

By way of the instant motion, Defendant seeks relief from that judgment. (*See generally* Doc. 710). He raises several grounds for this relief appealing to Rules 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect), 60(b)(3) ("fraud . . . misrepresentation, or misconduct by an opposing party"), 60(b)(4) ("the judgment is void"), 60(b)(6) ("any other reason that justifies relief"), and 60(d)(3) ("fraud on the court"). Yet, despite these wide-ranging appeals to different authorities and his identification of several instances of perceived misconduct,

Defendant makes clear that he challenges, "not a checklist of errors," but rather a "Single Structural Defect." (Doc. 710, at 40). Core to that defect, he argues, was a "foundational misrepresentation" by AUSA Lappen "to Judge Kelly [that] the one-on-one undercover instructions [sent by AUSAs and agents] to Waltzer were 'ministerial.'" (*Id.*). This is a claim the Government made in support of its argument in opposition to a motion to compel production of messages between the Government and Waltzer, (Doc. 361, at 35), and was one of the reasons the Court offered for denying that motion, (Doc. 370). Without this alleged misrepresentation, Defendant argues, "the entire structure collapses" because Judge Kelly did not "compel production of the prosecutors' one-on-one communications with Waltzer — resting entirely on Lappen's misrepresentation that they were 'ministerial,'" and the resulting lack of such evidence led to an incomplete and unfair *habeas* proceeding. (Doc. 710, at 40–42). Defendant argues the culmination of these events was the Court's denial of his *habeas* petition, which accepted the Government's arguments. (*Id.* at 48).

Although Defendant argues that the instant motion "is a true Rule 60(b) motion under *Gonzalez*," because it alleges "fraud and misconduct claims targeting the integrity of the habeas proceedings," (*Id.* at 69), this Court disagrees. Regardless of how Defendant frames it, the substance of his claim is not that the Government's *argument* that certain communications with Walzer were "ministerial" prejudiced the proceedings; rather, it is that the Court's *acceptance* of that argument did. This is evident from Defendant's efforts to prove that "[t]he habeas testimony proved [the alleged misrepresentation] wrong from every direction," (*id.* at 41), and his efforts to show the consequences of the Court's acceptance of it, namely the denial of Defendant's *habeas* petition, (*see id.* at 48). Therefore, Defendant has not challenged "a nonmerits aspect of the first federal habeas proceeding," but has rather "alleg[ed] that the court erred in denying habeas relief on the merits." *Gonzalez*, 545 U.S. at 532–34. Accordingly, the Court construes Defendant's

pending motion as a successive *habeas* petition. *See Gonzalez v. Smith*, 2022 WL 10493557, at *4 (E.D. Pa. Oct. 18, 2022) (finding a Rule 60(b) motion to be a successive *habeas* petition where "the thrust of Gonzalez's entire motion" was that the Court wrongly decided the issue of ineffective assistance of counsel, despite Gonzalez's attempts to frame the motion as challenging the Court's determination that certain claims were procedurally defaulted, which would have been proper claim under Rule 60(b)); *Heleva v. Matthews*, 2021 WL 6118735, at *4 (M.D. Pa. Oct. 26, 2021) (finding Heleva's motion to be a successive *habeas* petition because it was "trying to relitigate a previously decided issue" where, "[i]n Mr. Heleva's past federal habeas proceeding, he claimed that his signature on his Rule 600 waiver was forged" and in the new motion "assert[ed] a very slight variation on that claim: that Monroe County prosecutors lied to the Court in his habeas proceedings when they wrote in a brief: 'a Rule 600 waiver was signed by the Movant.'").

Having established that Defendant's Rule 60 motion is a (successive) *habeas* petition, this Court also finds that it raises claims already "presented in a prior application." 28 U.S.C. § 2844(b)(1). In Defendant's Rule 60 motion, he again challenges the propriety of AUSA Lappen's contacts with the Government informant. (Doc. 710, at 40–41). This is the same challenge that Defendant raised in his § 2255 motion, (Doc. 307, at 6), which Judge Kelly rejected on the merits in June 2018, finding that "[t]he evidentiary hearing record is replete with consistent and credible testimony that the [FBI] agents and AUSAs worked together in guiding Waltzer in the undercover operation, and that there was nothing improper about their handling of Waltzer," (Doc. 570, at 156). The Court also notes that, even earlier, in March 2011, Judge Kelly rejected the same argument in his denial of Defendant's motion for a new trial. (Doc. 240, at 12–13). There, Judge Kelly found that Defendant's claim "that the Government somehow failed to produce communications from law enforcement agents to Waltzer instructing him how to behave during

his undercover contacts with Georgiou" was supported by "little or no evidence" and that the evidence offered — the declaration of a person who analyzed telephone records and concluded that unidentified communications were missing and showed a pattern of instructions between Walzer and the Government — was "pure speculation" that failed to "explain or cite to any records that would show missing communications or, more significantly, missing communications relating to instructions to Waltzer about his conduct in dealing with Georgiou." (*Id.*).

This Court also notes that Defendant's claims are multidimensional and overlapping and that his writing is convoluted and needs to be untangled in many cases. The Court has made every effort to view all of Defendant's claims broadly in light of his *pro se* status. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing the obligation of a court to liberally construe *pro se* pleadings and other submissions, particularly focusing on imprisoned *pro se* litigants). To the possible but unlikely extent that any argument Defendant raised in the instant motion was not previously raised in his § 2255 motion, the fact remains that Defendant has presented the claims raised as entangled and "interdependent." (Doc. 710, at 49). He claims that they cannot be disaggregated. (*Id.*). As such, even if a particular claim raised in the instant motion was not, itself, raised before, it is still a component of the same argument on the merits that renders Defendant's motion a successive *habeas* petition. So, while the dismissal of such claims may not be required by § 2244, *see Gonzalez*, 545 U.S. at 530, they still form part of a successive *habeas* petition, which requires leave of the Court of Appeals before being brought in this Court, *Hoffner*, 870 F.3d at 306 (citing 28 U.S.C. § 2244(b)(3)(A)). Accordingly, this Court finds that Defendant's Rule 60 motion is not properly before the Court.

### *II. Insufficient Support for Relief Under Rule 60*

In the interest of judicial economy, this Court will address Defendant's Rule 60 motion and, for the reasons set forth, finds that even if Defendant's motion were properly before the Court, the Court would be unable to grant Defendant the relief he seeks because his claims lack sufficient support to warrant such relief.

If Defendant's motion were not a *habeas* petition, (which it is), it would be a Rule 60 motion. Defendant purported to file the motion under Rules 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect), 60(b)(3) ("fraud . . . misrepresentation, or misconduct by an opposing party"), 60(b)(4) ("the judgment is void"), 60(b)(6) ("any other reason that justifies relief"), and 60(d)(3) ("fraud on the court"). He argues that AUSA Lappen made misrepresentations to the Court, warranting relief under Rules 60(b)(3) and 60(d)(3) for fraud on the Court, (Doc. 710, at 40–41, 62–64, 70–71); that Judge Kelly was biased against him during the § 2255 proceedings, rendering the Court's judgment in the same "void" and warranting relief, under Rule 60(b)(4), (*id.* at 42, 73–74); that the Order denying his earlier claim of judicial bias was mistaken, warranting relief pursuant to Rule 60(b)(1), (*id.* at 14–15, 74); and that these, and other miscellaneous defects, collectively warrant the Court's use of discretion under Rule 60(b)(6) to grant Defendant relief from the Court's judgment denying his § 2255 motion, (*id.* at 71–73, 75). Defendant is mistaken on all counts.

#### *A. Legal Standards*

"Rule 60(b) allows a party to seek relief from final judgment and reopen a case based on mistake or excusable neglect, newly discovered evidence, fraud, or the void or prospectively inequitable status of a judgment." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025) (citing Fed. R. Civ. P. 60(b)(1)–(5)). "Rule 60(b) also includes a 'catchall' provision — Rule

60(b)(6) — that allows a district court to reopen a case for 'any other reason that justifies relief.'" *Id.* (quoting Fed. R. Civ. P. 60(b)(6); *Kemp v. United States*, 596 U.S. 528, 533 (2022)). "Under Rule 60(d)(3), a district court can 'set aside a judgment for fraud on the court.'" *Hatchigian v. Int'l Bhd. of Elec. Workers Loc. 98 Health & Welfare Fund*, 610 F. App'x 142, 143 (3d Cir. 2015). "Fraud on the court 'must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" *Id.* (quoting *Pizzuto v. Ramirez*, 783 F.3d 1171, 1180 (9th Cir.2015)).

"One who seeks such extraordinary relief from a final judgment bears a heavy burden." *Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967). In the context of a Rule 60(b)(1) motion, the movant's burden is to prove the presence of mistake, inadvertence, surprise, or excusable neglect, Fed. R. Civ. P. 60(b)(1), by offering more than a conclusory belief, and instead offering evidence in support of their request for relief. *See Bidlack v. Chesapeake Appalachia, LLC*, 2012 WL 1657934, at *4 (M.D. Pa. May 11, 2012).

A party seeking relief pursuant to Rule 60(b)(3) has "the burden of proving fraud and misrepresentation" by "clear and convincing" evidence. *Floorgraphics Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 434 F. App'x 109, 111 (3d Cir. 2011) (quoting, *Brown v. Pennsylvania Railroad Company*, 282 F.2d 522, 527 (3d Cir. 1960)). A party seeking relief pursuant to Rule 60(d)(3) bears the same burden. *Hatchigan*, 610 F. App'x at 143. "Clear and convincing evidence is evidence that is 'so clear, direct, weighty and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *Burrell v. United Healthcare Ins. Co.*, 2001 WL 873221, at *1 (E.D. Pa. July 30, 2001) (quoting *United States Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306, 309 (3d Cir.1985)) (alteration in original). To meet this burden, "the movant must establish that the adverse party engaged in fraud or other

misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).

To obtain relief pursuant to Rule 60(b)(4), a movant must demonstrate that the judgment is "void." Fed. R. Civ. P. 60(b)(4). A judgment is void if it is "so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. . . . The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). "'A judgment is not void,' for example, 'simply because it is or may have been erroneous.'" *Id.* (quoting, *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir. 1995)). Rather, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. As such, to prevail under Rule 60(b)(4), a movant bears the burden of proving that the judgment from which they seek relief was premised on one of those grounds, or a ground "on par with" them. *See id.* at 273.

"[R]elief under Rule 60(b)(6) is available 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'" *BLOM*, 605 U.S. at 211 (quoting *Kemp*, 596 U.S. at 533). The mere inapplicability of Rules 60(b)(1) through 60(b)(5) however, is not enough to justify relief under Rule 60(b)(6); that requires a demonstration of "extraordinary circumstances." *Kemp*, 596 U.S. at 533 (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, n. 11 (1988)). "[L]egal error does not by itself warrant the application of Rule 60(b). . . . Since legal error can usually be corrected on appeal, that factor without more does not justify the granting of relief under Rule 60(b)(6)." *Pridgen v. Shannon*, 380 F.3d 721, 728 (3d Cir. 2004) (quoting *Martinez–McBean v. Government of Virgin Islands*, 562 F.2d, 908, 912 (3d Cir.1977)).

*B. Discussion*

The numerous substantive arguments that Defendant makes in support of his claim for relief pursuant to Rule 60 fail to meet the above-cited standards. A careful review of the record before the Court indicates that Defendant's claims are without evidentiary support. Defendant is, therefore, unable to carry his burden as the movant under any of the provisions he has appealed to for relief. As discussed, Defendant's claims are multidimensional and overlapping, and his writing is convoluted. To the extent that any of the vague arguments are not specifically addressed below, the Court finds, nonetheless, that such vague arguments would not change the Court's conclusions and do not warrant additional discussion. Notably, Defendant is not always clear to which section of Rule 60 each particular argument appeals. In such cases, the Court has attempted to construe which section fits most appropriately and, where it is unable to do so, has applied the most generous standard in light of Defendant's *pro se* status. Even under this approach, Defendant's claims fail to meet his burden under Rule 60 so as to justify its extraordinary relief.

*i. Prosecutorial Misconduct*

Defendant alleges that AUSA Lappen made misrepresentations to the Court during the *habeas* proceedings, which constitutes fraud that would justify relief under Rules 60(b)(3) and 60(d)(3). As discussed, such claims must be proven by clear and convincing evidence. *Floorgraphics*, 434 F. App'x at 111. Defendant has not carried this burden.

Chief among Defendant's examples of alleged misrepresentations is the claim by AUSA Lappen that any text messages conveying instructions to the informant, Waltzer, were ministerial — a claim that Defendant argues was proven wrong by testimony at the *habeas* proceeding. (Doc. 710, at 40–41). However, as discussed above, this claim is belied by the record and rooted in "pure speculation" that failed to "explain or cite to any records that would show missing communications

or, more significantly, missing communications relating to instructions to Waltzer about his conduct in dealing with Georgiou." (Doc. 240, at 12–13). Defendant repeats this allegation in the instant motion, but has not provided any evidence to support this assertion or contradict the Court's then finding.

The record shows that AUSA Lappen represented to the Court that any "text messaging" between AUSAs and Waltzer "was ministerial in nature and could have pertained to any number of investigations." (Doc. 361, at 35). Defendant's claims that "[t]he *habeas* testimony proved [this] false," (Doc. 710, at 41), although accompanied by citations to the record, are unsupported. Defendant has identified testimony concerning phone calls and one-on-one conversations between AUSAs and Waltzer. (*Id.* (citing Doc. 482-1, at 26; Doc. 480-1, at 58–61, 79, 97; Doc. 483, at 61–64)). However, the identified testimony only reveals the existence of phone calls and in-person conversations between AUSAs and Waltzer; not text messages or emails. Moreover, AUSA Lappen has not denied that he or other AUSAs engaged in telephone conversations or other one-on-one conversations with Waltzer. (*See* Doc. 361, at 35–36; Doc. 483, at 61–64). Accordingly, Defendant has not provided any evidence to support that AUSA Lappen made a misrepresentation to the Court regarding communications with Waltzer.

Another alleged misrepresentation that Defendant raises is what he refers to as the "Bellamy fraud." (Doc. 710, at 28). Essentially, Defendant argues that prosecutors misrepresented to the Court that a witness, Jeffrey Bellamy, was available to testify at Defendant's evidentiary hearing on September 19, 2017, because he was scheduled to testify in another trial that day and the day before. (Doc. 710, at 29). Defendant argues this was a misrepresentation because AUSA Lappen and his colleague, AUSA Lesley Bonney, allegedly knew at the time that Bellamy would no longer be testifying at the other trial due to questions of his credibility. (*Id.*). Defendant claims

that he "immediately sought to abort" the examination of this witness, but that his request was denied. (*Id.* at 29). In the evidentiary hearing, Bellamy went on to testify that Defendant had offered him $10,000 for favorable testimony, (*id.* at 30), so Defendant argues that this alleged misrepresentation was calculated to "inject fabricated testimony" unfavorable to him, (*id.* at 63). He further argues this was a violation of his rights under *Massiah v. United States*, 377 U.S. 201 (1964). (*Id.* at 31, 63).

Upon review of the record, the Court finds neither clear and convincing evidence of fraud involving Bellamy, nor evidence of a *Massiah* violation. There is no record in this matter of Bellamy testifying on September 18 or September 19, 2017, in the trial in which he was a cooperating defendant. (*See* 2:15-cr-00180, Docs. 1310–11). However, that alone is not evidence that AUSA Lappen or AUSA Bonney made a fraudulent misrepresentation about Bellamy's presence that would warrant relief under Rule 60(b)(3) or Rule 60(d)(3), rules which require "the movant [to] establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron*, 698 F.2d at 207. First, Defendant has not presented evidence that this misrepresentation was fraudulent. He asserts that "Lappen's office had already provided written notice in [the matter] *United States v. Khalil Smith*, Cr. No. 15-180 (E.D. Pa.), that Bellamy would not be testifying" and that "Lappen and AUSA Leslie [*sic*] Bonney knew this," but has not offered any evidence to support this claim. (Doc. 710, at 29). There is also conflicting evidence in the record, namely, AUSA Lappen's sworn testimony that he was not aware of any notices sent out by his office the previous day regarding Bellamy because he had been occupied with the ongoing evidentiary proceedings in Defendant's *habeas* case. (Doc. 483, at 115–19). This Court finds no reason to doubt the sincerity of this testimony, particularly in light of Judge Kelly's repeated remarks that Lappen testified credibly

during the evidentiary hearing. (*See* Doc. 570, at 48, 54). And even without this testimony, Defendant's conclusory assertions would be insufficient to carry his burden of proof.

Moreover, even if there were evidence of a fraudulent misrepresentation, Defendant still has not shown that it prevented him "from fully and fairly prosecuting his case." *Stridiron*, 698 F.2d at 207. To the contrary, the record shows that Defendant did not "immediately s[eek] to abort" the questioning of Bellamy, as he claimed to have, (Doc. 710, at 29), but rather initially attempted to question Bellamy, (*see* Doc. 481, at 138). Moreover, Defendant, himself, remarked in his proposed findings of fact from the evidentiary hearing that "Bellamy provided no relevant testimony pertaining to the due process violations before the Court's consideration." (Doc. 556-2, at 14). Crediting this, Judge Kelly indicated that he did not "rely on these facts relating to the testimony of Bellamy" — namely, that Defendant claimed Bellamy would appear on Defendant's behalf and that he did not — "in resolving any of the specific claims presented by Georgiou in this § 2255 petition." (Doc. 570, at 131). Finally, the potentially harmful statement to Defendant's case — that Defendant offered Bellamy $10,000 to testify falsely about Waltzer — was elicited through Defendant's direct examination of Bellamy, not by the Government. (Doc. 481-1, at 143–44). Accordingly, there is no evidence that any misrepresentation prevented Defendant from fairly presenting his case.

Further, this Court finds that the Government's presentation of Bellamy as a witness did not violate Defendant's rights under *Massiah*. Under *Massiah*, a defendant is "denied the basic protections of [the Sixth Amendment] when there [i]s used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah*, 377 U.S. at 206. Defendant argues that introducing Bellamy as a witness constituted a *Massiah* violation because the Government

"deploy[ed] a government informant against a defendant at his own habeas hearing without disclosure" and at the hearing, "Bellamy testified that Mr. Georgiou offered him $10,000 to testify falsely about Waltzer." (Doc. 710, at 30–31). However, a review of the record reveals that (1) as discussed, the testimony harmful to Defendant's case was first elicited during Defendant's examination of the witness, (Doc. 481-1, at 143–44) and (2) that the conversation that Defendant was asking about in that examination was one that *he initiated* with Bellamy to discuss communications that Waltzer had with Bellamy, (*see id.* at 141–42). There is no indication here that Bellamy, to the extent he was operating as an agent of the Government, deliberately elicited the statements of Defendant at issue.

Another example of alleged misconduct that Defendant raises is that AUSA Lappen "controlled" the habeas proceedings, despite being a "disqualified prosecutor" — the title Defendant uses to refer to AUSA Lappen throughout his motion. (*See* Doc. 710, at 16–17). Defendant argues that AUSA Lappen was a "disqualified prosecutor" because Judge Kelly disqualified him from representing the Government at Defendant's evidentiary hearing. (*Id.* at 43). Because of this, Defendant argues, Lappen's "control" of the *habeas* litigation, was improper. (*Id.*). As examples of AUSA Lappen's alleged control of the *habeas* litigation, Defendant identifies the Court's adoption of a portion of the Government's proposed findings of fact as its own, and says that this means that Lappen "scripted" the Court's denial of his § 2255 motion, (*id.* at 24, 48); points to Lappen's testimony at the evidentiary hearing that the alleged concealment of certain contacts between Waltzer and the FBI was "no more relevant than if Waltzer had 'breakfast at McDonald's,'" and argues this is evidence the prosecutor "controlled those proceedings and ensured the suppression was never fairly examined," (*id.* at 26); argues that Lappen urged the use of the wrong standard of review in the *habeas* litigation, and that this "recasting [of the case] was

deliberate — the disqualified prosecutor deploying the wrong standard to ensure the claims he needed to fail would fail," (*id.* at 26–27); claims that AUSA Lappen "blocked nine witnesses from the § 2255 hearing," (*id.* at 31); argues that AUSA Lappen, by directing AUSA Bonney to object to testimony, blocked critical impeachment evidence, (*id.* at 35); and argues that there was "witness intimidation" because the AUSA Lappen contacted defense witnesses, after which some asserted their Fifth Amendment rights, (*id.* at 68).

As a preliminary matter, it is undisputed AUSA Lappen was disqualified from representing the Government at the evidentiary hearing. (Doc. 413). By Order dated August 10, 2017, Judge Kelly compelled AUSA Lappen to testify at the evidentiary hearing as a necessary witness and, therefore, ordered him "disqualified from acting as the Government's attorney at the evidentiary hearing." (*Id.*). However, this Order explicitly specified that AUSA Lappen was "disqualified from acting as the Government's attorney at the evidentiary hearing, but not as its attorney other than at the evidentiary hearing." (*Id.*). The Order, by its terms, extends the scope of the disqualification *only* to the evidentiary hearing. Moreover, the Court's disqualification order was entered "[p]ursuant to Rule 3.7 of the Pennsylvania Rules of Professional Conduct," which requires that lawyers not act as advocates at trials where they are likely to be necessary witnesses. (*Id.* (citing Pa. R. Prof'l C. 3.7)). That "Rule only prohibits a lawyer who is likely to be a necessary witness from acting as an advocate '*at a trial*.'" *Martin v. Turner*, 2011 WL 717682, at *5 (E.D. Pa. Feb. 18, 2011) (emphasis in original); *see also Caplan v. Braverman*, 876 F. Supp. 710, 711 (E.D. Pa. 1995) (disqualifying an attorney from representation at trial, but noting that this does not prevent the attorney from representing their client at pre-trial and post-trial matters). Accordingly, AUSA Lappen's participation in the *habeas* proceedings before and after the evidentiary hearing at which he was a witness was entirely permissible.

Defendant's argument's that AUSA Lappen, nonetheless, exercised impermissible "control" over the *habeas* proceedings and outcome is without support. Moreover, this argument ignores the role of Judge Kelly in the *habeas* proceedings. Defendant's arguments focus on instances where Judge Kelly made a finding that adopted the Government's position or made a ruling in favor of the government on an issue. These judicial acts, however, are not evidence of AUSA Lappen "controlling" the outcome of Defendant's *habeas* proceedings or "scripting" the Court's findings of fact. Instead, they are evidence of something that happens in courts every day: one party making an argument and the Court, in accordance with its independent judgment, accepting, or not, the argument, in part or in whole. That Defendant disagrees with the outcome does not render the Court or the rulings corrupt.

Further, there is no evidence to support Defendant's claims of "witness intimidation" or of prosecutors improperly blocking witnesses. Defendant argues that such intimidation must have occurred because AUSA Lappen contacted an incarcerated defense witness, Adam Lacerda, who was represented by counsel, and that witness then asserted his Fifth Amendment right. (Doc. 710, at 68). Defendant speculates that this was "a cover-up" designed "to prevent testimony" that might impeach Waltzer. (*See id.*). However, Defendant provides no evidence that points to AUSA Lappen's intentions or of the substance of his communications with Lacerda or his counsel. Further, the record before the Court contains nothing suggesting improper witness contact. Rather, the record demonstrates that any Government contact with Lacerda and other witnesses was Court-sanctioned, with Judge Kelly observing that "Georgiou and the government agreed upon twenty witnesses and, due to Georgiou's *pro se* status, the government was in the unusual position of contacting and scheduling Georgiou's witnesses, which it did diligently. . . . A number of proposed witnesses were in dispute, which required the Court to determine who were permitted to testify."

(Doc. 570, at 19). The record further shows that the Government did not speak directly with Lacerda, but rather "spoke with the attorney for Adam Lacerda, Mark Cedrone, Esquire, who advised that Lacerda would . . . invoke his Fifth Amendment right and refuse to testify." (Doc. 449, at 2 (quoting Doc. 427, at 6 n.2)). It also shows that any decision not to testify was voluntary, with "Lacerda and [another witness named] Vandergrift cho[osing] not to testify by pleading the Fifth Amendment through their attorneys at the start of the evidentiary hearing." (Doc. 570, at 20 (citing Doc. 468)). As such, while Defendant claims that the Government intimidated some defense witnesses and blocked others, the evidence before the Court does not support such contentions and shows no indication of direct contact between the government and those witnesses, but rather shows Court-sanctioned contact with their attorneys, voluntary assertions of some witnesses' Fifth Amendment rights, and the independent decision-making of the *habeas* judge about whether to allow witnesses to testify.

In sum, Defendant has raised numerous allegations of prosecutorial misconduct and has failed to meet his burden of proof to obtain relief for any of them.

*ii. Judicial Bias*

Defendant also argues that he is entitled to relief because his *habeas* proceedings were allegedly rendered unfair by the bias of the presiding judge. (Doc. 710, at 42). Defendant asserts that an impartial judge would have ruled differently in his case. (*See id.*). He argues that judicial bias rendered the judgment on his *habeas* petition void, warranting relief pursuant to Rule 60(b)(4). (*Id.* at 73–74). As support for his claim, Defendant argues that Judge Kelly's bias against him was revealed during Defendant's trial, when "Judge Kelly declared in open court, with the jury present: 'So what does that have to do with [Georgiou] committing this massive fraud?'" (*Id.* (quoting Doc. 176-1, at 74–75) (alteration in original)). Defendant refers to this as "a *per se* violation of

due process." Putting aside that this instance of alleged bias occurred at trial, rather than at the *habeas* proceeding of which Defendant purports to question the integrity, Defendant's claim of bias is belied by the very record he cites. An examination of the context of this question by Judge Kelly reveals two important facts: (1) he asked this question in a discussion about whether to allow a certain line of questioning, and (2) he asked this question to counsel *at sidebar*. (Doc. 176-1, at 72–76). It is clear, therefore, that Judge Kelly was not accusing Defendant of anything, but rather inquiring about the relevance of an argument to the allegations underlying Defendant's trial; and that, even if Judge Kelly's statement could be interpreted to be accusatory, it was not made in open court where it might influence the jury, but rather, in private. Therefore, Defendant's argument that Judge Kelly was biased against him, or that Judge Kelly somehow influenced the jury against him at trial, lacks sufficient support.

Defendant also argues that Judge Kelly's bias was revealed when he provided "assistance" to the Government by instructing prosecutors "to 'keep objecting' during the § 2255 evidentiary hearing." (Doc. 710, at 43). Defendant supports this claim with multiple transcript citations. However, examination of those citations reveals that, rather than coaching the prosecution or encouraging them to limit the testimony that Defendant sought to admit, Judge Kelly was merely telling the Government how to format its discontent with certain content for the record. (*See* Doc. 480, at 69; Doc. 550-1, at 64–65; Doc. 552, at 38).

Accordingly, Defendant has failed to show any bias of Judge Kelly that would render his *habeas* proceedings "affected by a fundamental infirmity" and, therefore, void. *See United Student Aid*, 559 U.S. at 270. He has, therefore, failed to show that the Court's judgment was void, as required by Rule 60(b)(4).

Notably, this is not the first time Defendant has raised claims of judicial bias. Defendant previously argued the same in August 2021, before the Honorable C. Darnell Jones, II, in a petition for a Writ of *Audita Querela*. (Doc. 642, at 128–35). Judge Jones rejected this claim and indicated that "Defendant failed to act with the requisite diligence in seeking recusal." (Doc. 675, at 2). Defendant argues that this was a mistake, warranting relief pursuant to Rule 60(b)(1), because Judge Jones raised the issue of timeliness *sua sponte*, after the Government failed to raise the issue and forfeited it. (Doc. 710, at 74). Based on the record, Judge Jones did not err by raising untimeliness *sua sponte*. Defendant's argument that "[u]ntimeliness in this context is a claims-processing rule, not a jurisdictional bar," (Doc. 710, at 82), is unavailing. It matters not whether untimeliness is a claim-processing rule or a jurisdictional bar in this context. Even if it is a claim-processing rule, the relevant rule is that the issue of untimeliness is forfeited where it is not raised until after a District Court has reached the merits. *Lizardo v. United States*, 619 F.3d 273, 278 (3d Cir. 2010) (citing *Eberhart v. United States*, 546 U.S. 12, 19 (2005)). This rule clearly contemplates instances where timeliness is raised by a party for the first time on appeal. Here, however, the District Court raised timeliness while considering the issue of judicial bias on the merits; it was not yet "after the District Court had reached the merits." *Eberhart*, 546 U.S. at 19. Moreover, "[i]t is now widely recognized that judges have discretion to raise procedural issues in habeas cases." *Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004); *see also Day v. McDonough*, 547 U.S. 198, 210 (2006) ("In sum, we hold that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."). Accordingly, Defendant has failed to show a mistake warranting relief under Rule 60(b)(1).

*iii. Denial of Counsel*

Defendant argues that he was denied counsel during his evidentiary hearing, in violation of *United States v. Iasiello*, 166 F.3d 212 (3d Cir. 1999), and, thus, was left unable to effectively challenge the Government's case. (Doc. 710, at 12, 46–47). The *Iasiello* Court held that "when an evidentiary hearing is required [in a § 2255 proceeding], appointment of counsel for indigents is mandatory under Rule 8(c) [of the § 2255 Rules]." *Iasiello*, 166 F.3d at 213. This requirement is rooted in Rule 8(c) of the § 2255 Rules, rather than the Constitution, as "[a] defendant has no constitutional right to counsel in a non-capital habeas proceeding." *United State v. Ngoma*, 2023 WL 2664742, at *2 (E.D. Pa. Mar. 28, 2023) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).

Defendants may waive this appointment and proceed *pro se*, if the *habeas* court so allows. *See Bush-Rowland v. United States*, 2025 WL 417108, at *2 (D.N.J. Feb. 6, 2025) (recognizing the court's discretion to decide whether to allow petitioner to proceed *pro se* in evidentiary hearing). Rule 8(c) of the § 2255 Rules does not require that a person be represented at an evidentiary hearing; instead, it requires that counsel be appointed for indigent petitioners. *See Iasiello*, 166 F.3d at 213. This contemplates that non-indigent petitioners will be free to represent themselves at such hearings, if they so choose. While Rule 8(c) of the § 2255 Rules guarantees that indigent petitioners will have access to counsel at *habeas* evidentiary hearings without needing to request such representation, it does not follow that it deprives them of the right to represent themselves, while preserving that right for wealthy petitioners. *See Faretta v. California*, 422 U.S. 806, 833–34 (1975) (holding in the case of an indigent defendant that "a strong argument can surely be made that the whole thrust of [prior] decisions must inevitably lead to the conclusion that a State may constitutionally impose a lawyer upon even an unwilling defendant. But it is one thing

to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. . . . [W]here the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. . . . The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored").

Here, the record reveals that the Court offered to appoint counsel for Defendant in advance of the 2017 evidentiary hearing, and that Defendant chose to waive counsel. (Doc. 536, at 6). Defendant contended that he made this choice because his "case has certain complexities to it" that he did not want handled by just "any practitioner," but rather an attorney "who has certain expertise." (*Id.* at 9). Judge Kelly again informed Defendant that he sought to appoint counsel. (*Id.* at 10). Defendant responded, "I would rather waive counsel for now though, Your Honor, if the Court will allow me to do so." (*Id.*). Defendant then clarified with the Court that his decision to waive appointment of counsel would be a final decision, binding on him throughout the proceedings, which the Court confirmed. (*Id.* at 13–14). Defendant then sought, instead of appointment of counsel to represent him, the appointment of standby counsel to assist him while he represented himself. (*Id.* at 17–18). After a thorough colloquy confirming Defendant's knowing waiver of counsel, including a warning that, "if you decide to represent yourself and the Court permits you to do that, you may not come back later and ask the Court to appoint counsel to represent you," (*id.* at 18–23), Judge Kelly concluded that Defendant "knowingly and voluntarily

decide[d] to proceed *pro se*" and "waived his right to counsel," (*id.* at 26–27). However, out of an abundance of caution, the Court appointed then-Federal Defender Arianna Freeman, ("Defender Freeman"), as standby counsel for Defendant. (*Id.* at 26–28). The record further shows that Defender Freeman "was present at counsel table with Georgiou" during the evidentiary hearing, (Doc. 570, at 21 n.16), and that Defendant conferred with her during the hearing, (*see, e.g.*, Doc. 483, at 101). The record confirms that Defendant "clearly and unequivocally declared" his desire to proceed *pro se*, and that he knowingly, intelligently, and voluntarily waived the appointment of counsel. *Faretta*, 422 U.S. at 835–36.

Defendant later sought appointment of counsel. However, this was not during the evidentiary hearing, but afterward, in December 2017. (*See* Doc. 527; Doc. 570, at 17). The Court denied the request at that point because Judge Kelly was concerned that Defendant sought to delay the proceedings, and had observed that Defendant was able to present his contentions "forcefully and coherently." (Doc. 570, at 17–18).

Because Defendant validly waived counsel at the evidentiary hearing and the Court did not deny appointment of counsel until *after* the evidentiary hearing, this denial did not violate Rule 8(c) of the § 2255 Rules. *See Iasiello*, 166 F.3d at 213. Moreover, because Defendant had no constitutional right to counsel when he requested its appointment, no constitutional right to counsel was implicated by this denial. *See Finley*, 481 U.S. at 555. Accordingly, Defendant has failed to demonstrate a denial of counsel that would warrant relief under Rule 60.

*iv. Miscellaneous Grounds for Relief*

Based on the foregoing, and a thorough consideration of Defendant's motion in its entirety, while there are no grounds justifying relief pursuant to Rules 60(b)(1)–(5), the Court does not find any "extraordinary circumstances" to justify relief under Rule 60(b)(6). *Kemp*, 596 U.S. at 533.

**CONCLUSION**

For the reasons set forth, the Court finds no grounds to grant Defendant's motion to grant the Rule 60 motion as unopposed. Further the Court finds that Defendant's motion for relief is not properly before this Court, as it constitutes a second successive *habeas* petition for which permission was not sought or obtained from the Third Circuit.

In the interest of judicial economy, the Court considered Defendant's arguments under Rule 60 and finds that Defendant has not met his burden of demonstrating that the requested relief is warranted. Accordingly, Defendant's motions are both denied.

An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.